Burks, J.,
delivered the opinion of the court..
This is a writ of error to a judgment of the hustings court of the city of Richmond.
There was a demurrer to the indictment, which was overruled, and this action of the court is assigned as the first error.
The indictment was for a violation of the provisions of the statute as contained in the first section of chapter 194, Code of 1873.
There were two counts. The first oharges “that Thomas G. Leath, (the plaintiff in error), within twelve months last past, in the year one thousand eight hundred and seventy-eight, at the said city, (Richmond), and within the jurisdiction of the said hustings court of the city of Richmond, unlawfully did keep and exhibit gaming tables called A B C or E O tables, faro bank, wheel of fortune, keno table, and tables of the like kind; the said tables of the like kind being under denominations to the grand jurors aforesaid unknown ; the games played on tables aforesaid being then and there played with cards, against the peace and dignity of the commonwealth of Virginia.”
The second count charges that the said Leath was a *875 partner and concerned in the keeping and exhibiting of gaming tables of the description named in the first count, concluding as in that count.
Several objections are urged to the sufficiency of the first count.
The first is for alleged duplicity, in that it charges several distinct offences.
We are of opinion that this objection is not well founded. The court pursues the language of the statute in describing the enumerated games or tables, except that it substitutes the conjunctive “and” for the disjunctive “or,” and in so doing, it charges really but. one offence, to wit: the keeping and exhibiting all the games or tables named, at the same time and place, and such a count is supported by proof of the keeping or exhibiting of any one of the games or tables mentioned, and, on conviction, there would be but one fine and one term of imprisonment. The pleader might have inserted separate counts, charging the keeping and exhibiting of each game or table at a different time and place, and, if warranted by the proof, the defendant might have been convicted of the several offences committed on different occasions, and fined and imprisoned for each offence.
The precedents justify the mode of counting adopted in the present instance.
“If a statute,” says Bishop, “makes it a crime to do this, or that, or that, mentioning several things disjunctively, the indictment may, indeed, as a general rule, embrace the whole in a single count; but it must use the conjunctive “and” where “or” occurs in the statute, else it will be defective as being uncertain.” 1 Bish. Crim. Proceed. § 334.
A statute in this state (1 B. Code, ch. 154, § 1), enacted that “ if any free person shall falsely make, forge, counterfeit, or alter, or procure to be made, forged, counterfeited, or altered, or willingly act or assist in falsely making, *876 forging, counterfeiting, or altering, any coin, &c., such person shall be deemed guilty of felony.” * * * An indictment, with one count, for a violation of this statute, charging that the accused certain- coin did falsely make, &c., and did cause and procure to be falsely made, &c., and did willingly act, &c., was held to be not faulty for duplicity. Rasnick v. Com., 2 Va. Cases, 356.
So, in numerous cases in other states, indictments in like form under statutes declaring one act, or another, or another, to be an offence, have been sustained. State v. Meyer, 1 Spears (S. Car.), 305; State v. Helgen, 1 Spears, 310; State v. Slocum, 8 Blackf. 315; State v. Colwell, 3 Rhode Isl. 284; State v. Fletcher, 18 Mo. 425; Hinkle v. Com 4 Dana (Ky.), 518; State v. Ringer, 6 Blackf. 109.
The statute of this state against unlawful shooting, &e., to be found in 1 R. Code, ch. 156, §§ 1, 2, like the present, statute, affixed a penalty where the act was done with intent to maim, disfigure, disable, or kill (in the disjunctive), and it was decided that the indictment should charge the-intents conjunctively, and further, that although all the intents were laid, proof of either would support the indictment. Angel v. Com., 2 Va. Cas. 231.
So, the statute against gaming made it unlawful to play in a public place at any game (with certain exceptions), or to bet on the sides or hands of such as did play. 1 R. Code, ch. 147, § 3; Acts 1847-8, ch. 10, § 5.
It was held by the general court, that a presentment under this statute, charging, in conjunctive form, an unlawful playing and betting, &c., ought not to be quashed' for duplicity. Tierman’s case, 2 Gratt. 545.
The case of Wingard v. State, 13 Geo. 396, was more-like the present. The statute of Georgia enacts that “if any person shall play and bet for money, or other things of value, at any game of faro, loo, brag, bluff, three-up, poker, vingtune, euchre, or any other game or games played with cards; or shall play and bet for money, or *877 other things of value, at any E O or A B 0 table, or other table of like character, or shall. bet at any game of nine-pins or ten-pins, or any other number of pins, person, so offending, shall, on conviction, be fined,” &c.
Certain persons were indicted for a violation of this statute, and it was charged in the indictment that they “ did play and bet with cards for money, at a game of poker, whist, faro, seven-up, three-up, and other games played with cards,” &c.
There was only one count in the indictment, and it was ■objected that the indictment was radically defective in uniting several distinct and incompatible offences in one count. The objection did not prevail; and Lumpkin, J., in delivering the opinion of the court, speaking of the several games enumerated in the statute, said, “Theoffence is consummated by playing and betting at any one of them. But, we apprehend, that the playing and betting at the whole at the same sitting, and between the same parties, would constitute but a single offence.” * * * “ But even if it were true,” he continued, “ that the playing and betting at each one of the games set forth in the act, or at any other game played with cards, constitutes a distinct and separate offence, still there is no rule of pleading which forbids them from being joined in the same count. By reference to the British books, they abound in similar forms.” After citing Chitty’s Crim. Law, he then refers to the cases, already cited in this opinion, of Rasnick v. Com., 2 Va. Cas. 356, and Hinkle v. Com., 4 Dana, 518. It was further objected, that the place at which the •offence is charged to have been committed is not stated with .requisite particularity in the indictment; . that the 'house or building in which the games or tables were alleged to have been kept and exhibited, should be stated.
The place laid in the indictment is the city of Richmond, and alleged to be within the jurisdiction of the said hustings court. This allegation is sufficiently certain. *878 This is not a case in which place enters into the offence. It is an offence without regard to the particular house, building, or other particular locality where it is committed.
It is also objected, that the indictment does not charge that the games or tables were kept and exhibited for gain. It is a sufficient answer, that the indictment follows the language of the statute, and further charges that the accused did “unlawfully keep and exhibit,” &c.
The objection that the indictment is not sufficiently certain in its description of the games or tables of “ the like kind” with those particularly enumerated, need not be passed upon in this case, as the evidence points only to one of the enumerated games—to wit, the game of faro ; and for the purposes of this case, so much of .the indictment as relates to games of “the like kind” may be disregarded.
The demurrer to the indictment being disposed of, the only remaining question is, whether the verdict of the jury was warranted by the evidence.
From the certificate of facts proved on the trial, it appears that about the hour of 10 o’clock of the night of the 10th of November last, James K,. Jeter, a policeman, under the direction of the chief of police, attended by another policeman, visited a room on Fourteenth street, in the city of Bichmond, over the bar room kept by D. Delarue. On reaching the room, he knocked at the door. The plaintiff in error answered the knocking, and after two or three minutes, the door was opened, and the policeman with his attendant entered the room. The only persons he found in the room were the plaintiff in error and one W. A. Puryear, both of whom he arrested, though it would seem that Puryear was probably afterwards released, as he testified in the case in behalf of the commonwealth.
The, room was found to be neatly carpeted and a bright *879 fire in it. The furniture consisted of two tables, a side- ’ , board, and a number of chairs. Three or four chairs were in place around one of the tables. On the floor tween this table and the sideboard were several ivory and bone chips, such as are used by persons in betting at the game of faro. In the sideboard were found a cloth with cards pasted on it, called “ a lay-out,” used for the game of faro, with a number of ivory and bone chips already described, a box called by faro-dealers “a dealing box,” containing a full pack of cards in position, a number cards called “ cue-papers,” used by persons betting at the game of faro to keep an account of the games played, and other packs of playing cards; all of which implements the policeman took possession of.
It was proved that the plaintiff in error, some time back, had been canvassing for a directory for the city of Petersburg, where he claimed to live, and took his meals at Delarue’s when in the city of Richmond, and that he came from Petersburg on the day preceding the night in which he was arrested.
It was further proved, that the room in which the plaintiff in error was found had been occupied since the year 1868, by one Potter, who had the reputation of being a gambler, and by one William Duke, his partner; that Potter died in September last, and Duke survived him, and died about one month before the arrest or before the trial, it is not certain which.
Delarue, as tenant, occupied the lower part of the building, and, in March last, wishing to get possession of the upper rooms also, rented the whole house, and andeavored to get Potter out of the rooms occupied, but did not succeed in doing so, Potter claiming to be a tenant from year to year, and that he had the right to hold possession until 15th November, which was five days after the day of the arrest.
It was further proved by Delarue’s bar-keeper that the *880 room in question was not kept by Delarue; that he could . J ... not account for the possession by the plaintiff in error of key' and the occupancy of the room; that he could £*ve n0 accourk of the gambling apparatus found there, nor could he say who had ordered a firejto be kindled up there; and that the plaintiff in error was not the proprietor of the room, and could not have been the proprietor of the room without his knowledge.
It was also proved that after Potter’s death his brother came to Richmond to take possession of the decedent’s effects, stating that decedent had left effects in a room; which effects he intended to sell.
It further appears that administration on the estate of Potter had been granted to one Samuel McCubbin.
It was proved by Puryear (who testified, as before stated, on behalf of the commonwealth) that at the time of the arrest he had been in the room from twenty minutes to half an hour; that he had seen no gambling or gambling apparatus while he was there, and that on entering the room he asked the plaintiff in error this question: “Is there any game going on to-night ?” To which the plaintiff in error replied, “I don’t know; I just got over from Petersburg.”
After certifying the foregoing facts, the court further certifies as follows: “ That the paraphernalia, said to be that of a faro bank, as mentioned in the testimony of the witness Jeter, and taken possession of by him, was exhibited to the jury; and that the ownership of the same, or the proprietorship of the room, was not further accounted for than as heretofore set forth in this bill of exceptions, and that the foregoing are all the facts proved upon the trial of the cause.”
Upon these facts, we are of opinion that the evidence was plainly insufficient to warrant the finding of the jury. At most, it excites only a suspicion against the plaintiff in error. It falls far short of the proof of guilt required by *881 the law to justify conviction. The room in which the plaintiff in error was found when arrested was evidently a place fitted up and used for the purpose of gaming, but it was distinctly proved that he was not the proprietor of the room; that it had been claimed by Potter under a tenancy which had not expired, and there was no circumstance connecting him with the possession or use of it, or with the ownership or use of the gaming apparatus found in the room. He was not in the possession of any of the implements found, and therefore it was not incumbent on him to give any account of them, if any such accpunt he could give. He asserted no claim to them. No questions were put to him about them, and he volunteered no statements. There was no evidence that on the night he was arrested, or at any other time, he had exhibited the game of faro, or any other game, at the place of arrest or elsewhere. On the contrary, it was proved by Puryear, the only person besides the plaintiff in error found in the room at the time of the arrest, and who had been there from twenty minutes to half an hour, that he had seen no gambling or gambling apparatus while he was there. The only evidence that could tend to connect the plaintiff in error with the offence charged against him was his bare presence at night in a gaming house, the proprietor of which was unknown, and his presence there, if for an unlawful purpose at all, was more consistent with a purpose to bet at a game than to exhibit one.
Precedents are of little value in determining whether a verdict in a particular case is against the evidence or not, as the facts and circumstances are seldom, if ever, the same in any two cases; but the following decisions in criminal cases, prominent among those in which verdicts of juries have been set aside by this court and by the general court, because of the insufficiency of the evidence, may , be referred to. Grayson’s case, 6 Gratt. 712; Id. 7 Gratt. 613; Smith’s case, 21 Gratt. 809; Pryor’s case, 27 Gratt. 1009 ; *882 Johnson’s case, 29 Gratt. 796. We do not think the insufficiency of the evidence was more palpable in Johnson’s than in this.
-^le judgment of the hustings court must be reversed and annulled, the verdict of the jui’y set aside, and the cause remanded for a new trial.