# CRIMINAL CASES.

## Richmond.

## Morganstern *v.* Commonwealth.

December 3, 1896.

1. Criminal Law—*Indictment—Series of acts in one indictment—Keeping open a bar-room and selling liquor.*—Where a statute, in defining one offence, has specified a series of acts, any one of which separately or all together may constitute the offence, and has prescribed the same penalty for the commission of one or all the acts, the commission of the any two or more of them may be alleged conjunctively in the same count of an indictment, and although each act may in itself constitute an offence under the statute, yet if they are all committed by the same person, at the same time and place, they are to be considered as parts of the same transaction and collectively constitute a single offence, and hence an indictment which charges the defendant with keeping open a bar-room and selling liquors therein at the same time and place, charges but one offence.

2. Criminal Law—*Indictment—Conjunctive charge of several acts—Proof.*—Where the several acts specified in the statute are conjunctively charged in the same count of an indictment, the proof of any one of them is sufficient to authorize a conviction, and where one or more of the acts are committed at one time, and other or the same acts are committed at another time, they may be charged in different counts of an indictment, and if proved, the defendant may be convicted of the several offences so committed on different occasions and punished for each offence.

3. Opening Bar-Room and Selling Liquor on Sunday—*City ordinance on same subject—Case at bar.*—In order that a city may be exempt from the operation of the statute forbidding the opening of a bar-room and selling liquor within certain hours (Sec. 3804 of the Code), the police regulations and ordinances of the city must define the same offence and prescribe substantially the same punishment as has been done in the statute. The city of Richmond is not exempt from the operation of

Opinion.

the statute because its ordinance on the subject is less comprehensive than the statute, in that the time during which the bar-room, &c., is to be kept closed is, under the ordinance, "every Sunday, during the whole day," while under the statute it is from 12 o'clock Saturday night until sunrise the succeeding Monday morning, and the ordinance forbids only the opening of the bar-room, &c., and not the sale of liquor, and prescribes only one penalty for keeping open the whole day, while the statute not only forbids the opening during the designated hours, but also the sale of liquor during those hours, and affixes a separate penalty for each sale of liquor during the prohibited time.

4. Bar-Room—*Closing under Sec. 3804 of Code—Regulating the sale of liquor.* The mere enclosure of the bar counter, while free access is permitted into the room in which liquors are dispensed is not a compliance with Section 3804 of the Code, which requires the bar-room to be closed within certain hours. The bar-room must be faithfully closed and all access to it cut off during the prohibited hours, except, perhaps, to the casual entrance of the owner or his employee for some innocent and necessary purpose. The mere fact that no one is in attendance on the bar makes no difference. The sale of liquor is not an absolute right, but one which the State has the right to regulate and supervise.

5. Indictment for keeping open bar and selling liquor—*Proof of either sufficient*—In the case at bar the defendant was indicted for keeping his bar-room open and selling liquor on Sunday. Proof of either act was sufficient to authorize a conviction.

Error to a judgment of the Hustings Court of the city of Richmond, rendered December 12, 1895, on an indictment for a misdemeanor.

*Affirmed.*

The opinion states the case.

*L. O. Wendenburg,* for the plaintiff in error.

*Attorney-General R. Taylor Scott,* for the Commonwealth.

Riely, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Hustings Court of the city of Richmond.

The accused, upon the calling of the case for trial, moved the court to quash the indictment, and also demurred to it,

on the ground of alleged duplicity and uncertainty. The court denied the motion and overruled the demurrer, and this action of the court constitutes the first assignment of error.

The indictment was for a violation of the provisions of Sec. 3804 of the Code. It contains but a single count, which charges "that Otto Morganstern (the plaintiff in error), on the 28th of July, in the year one thousand eight hundred and ninety-five, at the said city, and within the jurisdiction of the said Hustings Court of the city of Richmond, being then and there the keeper and proprietor of a bar-room, restaurant, saloon, and other place where intoxicating liquors are sold, between the hours of twelve o'clock Saturday night, July 27, 1895, and sunrise of the next succeeding Monday morning, July 29, 1895, unlawfully did permit his said bar-room, restaurant, saloon, and other place to be and remain open, and did, then and there, unlawfully sell and permit to be sold intoxicating bitters and other intoxicating liquors therein, against the peace and dignity of the Commonwealth of Virginia."

The duplicity was alleged to consist in charging in the same count two separate and distinct offences, viz: 1. Opening the bar-room, and 2. Selling intoxicating liquors therein.

The objection made to the indictment is not tenable. The count follows the language of the statute, and charges that the opening of the bar-room and the sale of the liquors were done at the same time and place. Opening a bar-room or other place where intoxicating liquors are sold during the time it is prohibited by the statute is in itself a criminal offence, and so is the sale of intoxicating liquors. If they are separately done on different occasions, they constitute separate and distinct offences; but when they are charged, as in this indictment, in the language of the statute, and as being done at the same time and place, they constitute together only one offence, and there can be but one punishment.

Where the Legislature, for the purpose of suppressing a vice or preventing a wrong, has, by statute, made the vice or wrong a criminal offence, and, in defining the offence, has specified a series of acts, either of which separately or all together may constitute an offence, and has prescribed, as here, the same penalty for the commission of one or all of the acts, it is well settled that the commission of any two or more of them may be alleged in the same count of an indictment, if conjunctively charged. Although each act by itself may constitute an offence under the statute, yet if they are all committed by the same person at the same time and place, they are to be considered as parts of the same transaction and collectively constitute a single offence. The reports abound with decisions sustaining indictments of this character. *Leath's Case*, 32 Gratt. 873; *Tiernan's Case*, 4 Gratt. 545; *Rasnick* v. *Com.*, 2 Va. Cas. 356; *Angel* v. *Com.*, Id. 231; *Reg.* v. *Bowen*, 1 Cox Cr. Cas. 88; *Byrne et al* v. *State*, 12 Wis. 519; *State* v. *Bielby*, 21 Do. 204; *People* v. *Frank*, 28 Cal. 507; *Com.* v. *Eaton*, 15 Pick. 273; *Com.* v. *Brown*, 14 Gray. 419; *Com.* v. *Dolan*, 121 Mass. 374; *Com.* v. *Thomas*, 10 Gray. 483; *Francisco* v. *State*, 4 Zabr. 30; *State* v. *Morton*, 27 Vt. 310; *Edge* v. *Com.*, 7 Barr 275; *State* v. *Hastings*, 52 N. H. 452; *State* v. *Murphy*, 47 Mo. 274; *Hinkle* v. *Com.*, 4 Dana 518; *State* v. *Meyer*, 1 Spears 305; *State* v. *Helgen*, Id. 310; *Wingard* v. *State*, 13 Ga. 396; *Hart* v. *State*, 2 Texas Appeals 39; and *Laroe* v. *State*, 30 Texas Appeals 374.

Where the several acts specified in the statute are conjunctively charged in the same count of an indictment, the proof of any one of them is sufficient to authorize a conviction.

Where one or more of the acts are committed at a certain time, and other or the same acts are committed at a different time, the pleader may charge them in different counts, and if they are proved, the defendant may be convicted of the several offences so committed on different occasions and punished for each offence.

There is annexed to the statute defining the offence for which the defendant was indicted a proviso, "that this law shall not apply to any city having police regulations on this subject, and an ordinance inflicting a penalty equal to the penalty inflicted by this statute."

The motion of the defendant to quash the indictment and also his demurrer to the indictment having been overruled, he next tendered to the court a special plea, which was unnecessary, in order to avail himself of the defence he thereby intended to make, in which he recited the ordinance of the city requiring bar-rooms to be closed on Sunday, averred that he had been convicted under the ordinance by the Police Court of the city for the same offence for which he was indicted, and claimed the right to be discharged from prosecution under the indictment.

The plea was intended to present the defence that the city has police regulations on the subject of the statute within the meaning of its proviso, and that the ordinance of the city inflicts a penalty equal to that inflicted by the statute, so that he was not liable to prosecution for the offence the statute creates. The ordinance is as follows: "Every hotel keeper and keeper of a restaurant, lager beer saloon, or other place where ardent spirits, beer, cider, or other drinks are sold or given away, shall close the bar where such drinks are sold or given away, every Sunday during the whole day. * * * Any person violating any provision of this section shall be fined not less than ten nor more than five hundred dollars."

The plea presents substantially the same question that was raised and decided in *Thon's Case*, 31 Gratt. 887. The ordinance of the city is precisely the same now as it was when passed upon in that case, as is also, the statute, with the exception that the latter has been since amended by the Legislature and its scope enlarged by prohibiting the opening of a bar-room, saloon, or other place for the sale of intoxicating liquors, as well as their sale, during a designated time of

every week. It was held in that case that the offence defined by the ordinance of the city was not substantially the same as that defined by the statute, which was the meaning of its proviso, and the penalty prescribed by the ordinance was not equal to that inflicted by the statute.

The proviso of the statute was construed in that case to mean that the police regulations or ordinance of a city, in order to exempt the city from the operation of the statute, should "define the same offence and prescribe the same punishment substantially as had been done in the statute."

The ordinance is less comprehensive than the statute, and even greater differences now exist between the ordinance and the statute than existed between them when *Thon's Case* was decided. The ordinance requires the bar where intoxicating drinks are sold or given away to be closed only during the whole of Sunday, while the statute prohibits both the opening of a bar-room, saloon, or other place for the sale of intoxicating liquors and the sale of such liquors not only during the whole of Sunday but also until sunrise of the succeeding Monday morning. It would not be a violation of the ordinance to keep open a bar, saloon, or other place for the sale of intoxicating liquors, or to sell intoxicating drinks therein, between 12 o'clock of a Sunday night and sunrise of the succeeding Monday morning, while it would be a clear violation of the statute to do either during that time at any other place within the State than one governed by such ordinance. This would make one law for the city and another one for the county. "This," as was said by Judge Moncure in *Thon's Case*, "would create a palpable difference and inequality in the law governing different localities of the same State, and could never have been contemplated or intended by the Legislature."

It was also held in *Thon's Case* that the penalty prescribed by the ordinance was not equal to the penalty inflicted by the statute, for under the ordinance there could only be one pun-

ishment for keeping open the bar where intoxicating drinks were sold or given away the whole of Sunday, while under the statute the sale of each drink during the time the traffic is prohibited is a different offence, and punishable by a separate fine. This inequality between the penalty of the ordinance and the penalty of the statute is not removed by the amendment of the statute, but still exists. Under the present statute a fine is prescribed for opening a bar-room, saloon, or other place for the sale of intoxicating liquors between 12 o'clock on Saturday night and sunrise of the succeeding Monday morning, and also for each sale of such liquors during that time, but under the ordinance there can only be one fine for keeping open such place on Sunday, and none at all for the sale of liquor during that day, or the time within which such sale is prohibited.

The demurrer to the plea was properly sustained by the court.

After the testimony was closed, the defendant moved the court to give certain instructions to the jury. This the court refused to do, and in lieu thereof gave one instruction of its own. To the action of the court in refusing his instructions and giving its own the defendant excepted, and this ruling of the court constitutes his third assignment of error.

The instructions asked for by the defendant are as follows:

1. "The court instructs the jury that if they believe from the evidence that the accused had his bar enclosed by a curtain nailed down to the floor and reaching nearly to the ceiling, and that said side entrance was the only way for his boarders to reach his restaurant without opening the front door, and that said door was kept open for the purpose of allowing his boarders to enter, and that there was no one there to give or sell or deal out the intoxicating bitters or liquors, then they must find the accused not guilty, and if there is any reasonable doubt in their minds. about this, they must give the accused the benefit of this doubt."

2. "The court instructs the jury that they cannot convict the accused unless they believe from the evidence that the accused sold or permitted to be sold intoxicating bitters or liquors, as charged in the indictment."

3. "The court instructs the jury that they cannot convict the accused unless they believe from the evidence beyond all reasonable doubt that he had his bar-room or saloon open, and sold or permitted to be sold intoxicating bitters or other intoxicating liquors therein between the hours of twelve o'clock Saturday night, July 27, 1895, and sunrise of the next succeeding Monday morning, July 29, 1895."

4. "The court instructs the jury that they cannot convict the accused in this case of the offence of keeping or permitting his bar-room or saloon to be kept open as charged in the indictment, unless they believe from the evidence beyond all reasonable doubt that he or his employee was within, ready to do business, and that there was no obstruction to persons entering."

5. "The court instructs the jury that the simple fact of keeping the side door that leads to the bar-room and restaurant open is not sufficient to convict one of having his barroom or saloon open, and unless they believe from the evidence beyond all reasonable doubt that said door was kept open for the purpose of traffic in intoxicating bitters or liquors they must acquit the accused."

The instruction given by the court in lieu of those asked for by the defendant was as follows:

"The court instructs the jury that in contemplation of law a bar-room is open when it is kept perfectly accessible to those who wish to enter it, and it is equally in contemplation of law open if the ordinary and usual entrance is closed and general access is permitted through a private entrance. Nor is it necessary in order to find the defendant guilty to prove that there was some one within attending the bar, nor is it necessary to prove a drink was sold."

The first instruction asked for by the defendant announced as the true construction of the statute under which he was indicted, that although his bar-room was not entirely closed, but was accessible through a side door, which was the way his boarders, when the front door was closed, had to enter the restaurant conducted by him in the same room with his bar, yet if the bar counter itself was enclosed by a curtain fastened to the floor and extending nearly to the ceiling and there was no one present and ready to dispense intoxicating bitters or liquors, the bar-room was not open within the meaning of the statute.

This was an erroneous construction of the statute, and a misconception of the intention of the Legislature as manifested in its enactment. The original (Acts 1874, p. 76) of the present statute prohibited the *sale* of intoxicating drinks in any bar-room, restaurant, saloon, store, or other place from twelve o'clock on each and every Saturday night of the week until sunrise of the succeeding Monday morning. The Legislature subsequently amended and re-enacted the statute (Acts 1877-78, p. 304,) into its present form, and thereby declared that "no bar-room, saloon, or other place for the sale of intoxicating liquors *shall be opened*" during the time it had previously prohibited and still prohibits the sale of intoxicating liquors. It meant that during such time not only that there should be no *sale* of intoxicating liquors, but that the *place* in which they were sold the rest of the week should be closed to view, and to all access, except perhaps to the casual entrance of the owner or his employee for some innocent and necessary purpose, so as to remove any temptation to buy or to sell, and all ground of offence to the moral and orderly sentiment to be found in every community which condemns particularly any traffic in liquor on Sunday. The mere enclosure of the bar counter, while free access is permitted to the room in which the liquors are dispensed, is not a compliance either with the letter or the spirit of the statute.

It was argued that if such is the meaning of the statute, it will prevent the keeping of a restaurant and a bar in the same room, and interfere with the legitimate business of furnishing meals to boarders on Sunday. The latter is not at all a necessary consequence, but if so, that is a matter for the consideration of the keeper of a restaurant when he applies for license to sell liquor, and proposes to sell it in the same room in which he has his restaurant. To traffic in liquor is not an absolute right, but a business which the State, under its police power, may regulate and control. The State requires that a license shall be obtained to engage in it, and has prescribed how the business shall be conducted. The statute is plain and express that the "bar-room, saloon, or other place for the sale of intoxicating liquors shall not be opened  *  * from 12 o'clock on each and every Saturday night of the week until sunrise of the succeeding Monday morning." The applicant for the license knows or is presumed to know the law. When he obtains the license, he engages to obey the law. If he deem any of the restrictions imposed by the law on the conduct of the business to be a hardship, he was aware of them in advance and cannot complain. His bar-room must be faithfully closed and all access to it cut off during the time the law declared that it shall not be opened.

The second instruction announced that the jury could not convict the accused unless they believed from the evidence that he sold or permitted to be sold intoxicating bitters or liquors as charged in the indictment. Keeping the bar-room open, equally with the sale therein of intoxicating liquors, is an offence under the statute. Both acts were charged in the indictment, and proof of either act was sufficient to authorize his conviction; but the instruction wholly ignored the offence of keeping the bar-room open. However clear and satisfactory the evidence might be that the defendant kept his bar-room open, the court was asked to tell the jury that they must acquit him, unless they believed from the evidence that

he sold or permitted to be sold intoxicating bitters or liquors as charged in the indictment. The instruction was clearly contrary to law.

The third instruction required the jury to believe from the evidence, before they could convict the defendant, that he both kept his bar-room open and sold or permitted to be sold intoxicating liquors, therein, when, as already stated above, proof of either act was sufficient to justify his conviction. This instruction was equally as objectionable as the second, and for the like reason.

The fourth and fifth instructions were virtually disposed of in discussing the first instruction. It was not necessary, in order to constitute the offence of opening his bar-room, that the defendant or his employee should be within and ready to do business, or that the side door which opened into the bar-room and restaurant should be kept open for the purpose of traffic in intoxicating liquors.

The court did not err in refusing to give each and all of the instructions asked for by the defendant.

Nor did the court err in the instruction which it gave in lieu of them. The instruction correctly expounded the law of the offence, which is defined in the statute and charged in the indictment. It was not liable to the objection that it announced abstract principles of law. It correctly construed the statute, and was directly applicable to the issue before the jury. *Norfolk & W. R. Co.* v. *Ampey*, 93 Va. 108

The only remaining assignment of error relates to the refusal of the court to set aside the verdict on the ground that it was contrary to the law and the evidence, and award the defendant a new trial. In this there was no error. The evidence showed that the defendant kept his bar and restaurant in the same room, and that notwithstanding the main entrance to the room by the front door was closed, there was full access to the room on the Sunday designated in the indictment by a side door that opened directly into it, and that persons

Opinion.

were in the room, whom the defendant claimed, however, to be his boarders, one of whom was eating at the lunch counter and being served by a colored waiter. It also showed that there was no wall or partition between the bar and restaurant, and no pretence of closing the bar-room, except the main entrance to it, and by enclosing the bar counter by a curtain that was nailed to the floor and extended nearly to the ceiling.

The judgment of the Hustings Court must be affirmed.

*Affirmed.*