## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### LEWIS .V. COMMONWEALTH.

January 16, 1917.

1.  LARCENY—*Variance.*—Upon an indictment for larceny, proof that the accused obtained money by false pretenses will sustain the indictment.

2.  LARCENY BY FALSE PRETENSES—*Charge of Larceny of Money— Proof of Larceny of a Check.*—An indictment alleged the larceny of money by false pretenses, whereas the proof showed . the larceny of a check afterwards cashèd by defendant.

    *Held:*   That in every real sense money was paid to the accused, and, therefore, the charge in the indictment was substantially proven.

Error to a judgment of the Hustings Court of the city of Richmond.

*Affirmed.*

The opinion states the case.

*L. O. Wendenburg,* for the plaintiff in error.

*John Garland Pollard, Attorney-General,* and *Leslie C. Garnett, Assistant Attorney-General,* for the Commonwealth.

HARRISON, J., delivered the opinion of the court.

The plaintiff in error, J. A. Lewis, was indicted, tried and convicted in the Hustings Court of the city of Richmond for the larceny of money amounting to the sum of $174.00, the property of the "Home Beneficial Association," and sentenced to serve a term of one year in the peniten-

tiary in accordance with the finding of the jury. To that judgment this writ of error was awarded.

The certified facts are very few and not disputed. It appears that the life of Emily Capps was insured in the Home Beneficial Association in the sum of $174.00 for the benefit of Lucy Ruffin, who claimed the amount due under the policy under the false pretense that Emily Capps was dead; that the prisoner, who was a practicing physician, falsely and fraudulently certified to the association that the insured was dead, and presented an order from Lucy Ruffin directing all money due her under the claim of Emily Capps to be paid to the accused, Dr. J. A. Lewis. Thereupon, the Home Beneficial Association delivered to Dr. Lewis a check for $174.00, drawn upon the Merchants National Bank of Richmond. This check the accused endorsed and had cashed by the St. Luke's Penny Savings Bank, where he did business; from this bank the check passed in due course through the clearing house of Richmond, to the Merchants National Bank, upon which it was drawn, where it was paid and charged to the account of the Home Beneficial Association.

The sole contention of the prisoner is that the indictment alleged the larceny of money, whereas the proof showed the larceny of a check, thereby creating such a variance between the *allegata* and the *probata* as entitled him to a new trial.

The Code (1904), section 3722, provides that, "If any person obtain, by any false pretense or token, from any person, with intent to defraud, money or other property which may be the subject of larceny, he shall be deemed guilty of the larceny thereof."

Under this statute, if it was larceny to obtain the money by false pretenses, it was equally larceny to obtain the check by the same means. The check was received as an equivalent for the money, according to the universal custom in such cases, and was the usual and proper means for obtain-

ing the money. It has been repeatedly held by this court that, upon an indictment for larceny, proof that the accused obtained money by false pretenses will sustain the indictment. *Anable's Case*, 24 Gratt. (65 Va.) 563; *Pitsnogle* v. *Comth*, 91 Va. 808, 22 S. E. 351, 50 Am. St. Rep. 867.

We are of opinion that, upon the facts in the case at bar, the ultimate offense of obtaining money by false pretense is supported by the evidence that such money was fraudulently obtained by means of a check fraudulently acquired. In every real sense money was paid to the accused, and, therefore, the charge in the indictment was substantially proved. The check was but an incident of the transaction by which the fraud was perpetrated, and but one of the steps leading to the ultimate crime of obtaining money under false pretenses.

The identical question here involved, so far as advised, has not until now been before this court. It has, however, been considered and disposed of in many other jurisdictions, the great weight of authority sustaining the view we have taken.

In *State* v. *Palmer*, 40 Kansas, 474, 20 Pac. 270, the indictment charged that the accused unlawfully and fraudulently, with intent to cheat one Certwell, did falsely represent that he was the owner of a certain three year old roan mare then in his possession, and could pass a good title thereto; that the said Certwell, believing the false representation to be true, was induced to purchase the said roan mare and pay the said Palmer the sum of $85.00. The court said: "The evidence, however, shows that Certwell drew the check for $75.00 in favor of the defendant upon the bank of Western Kansas, and then went with the defendant to the bank, identified him, and the bank then took the check from the defendant and paid him $75.00 out of money deposited in the bank by Certwell and charged

the same to Certwell's account. This was certainly the obtaining of money as well as the obtaining of the check. *Roberts* v. *The People*, 9 Col. 458, 13 Pac. 631."

In *State* v. *Terry*, 109 Mo. 601, 19 S. W. 206, the court said : "The point is made that the indictment charges that the defendant attempted to obtain the money, but that the proof shows that, had the offense been consummated, he would not have received any money, but merely a check. There is no force in this contention, because the attempt is the gravamen of the charge, and the fact that the result of the completed crime would only have been a check, upon which the money could have been obtained, cuts no figure in the case and has no tendency to disprove the fact of the attempt having been made."

In *State* v. *Daniel*, 83 S. C. 309, 65 S. E. 236, 237, in which it was held that proof of a larceny of a note will not support an indictment charging larceny of money, the court said: "In *Hunt* v. *State*, 72 Ark. 241, 79 S. W. 769, 65 L. R. A. 71, 105 Am. St. Rep. 34 [2 Ann. Cas. 33], proof of obtaining a check on which the bank paid the money was held to be not a fatal variance, in a trial for obtaining money under false pretenses. In that case the court well says: 'It would be carrying a technicality to a most dangerous extreme to hold that proof of the mere instrumentalities of obtaining the money constituted a variance with the charge of obtaining the money itself, where the same evidence also showed the fact of obtaining the money itself.' " The same principle was applied in *People* v. *Lammerts*, 164 N. Y. 137, 58 N. E. 22, *Schaumloeffel* v. *State*, 102 Md. 470, 62 Atl. 803; *People* v. *Hoffman*, 142 Mich. 531, 105 N. W. 838; *State* v. *Palmer*, 40 Kan. 474, 20 Pac. 270; *State* v. *Gibson*, 132 Iowa 53, 106 N. W. 270. All of these cases rest on the ground that as an ultimate fact the money was obtained; the check being only a means of obtaining it." Approved in *State* v. *Jackson*, 87 S. C. 407, 69 S. E. 883 (decided in 1911).

In *State* v. *Gibson*, 132 Iowa, 53, 106 N. W. 270, the indictment charged the defendant with obtaining $24.80 by .false pretenses. The evidence was that the defendant obtained a check for $24.80 drawn upon a bank in Des Moines, Iowa, received by him in Chickasaw county and cashed in a bank at New Hampton. The court said: "Again it is argued that there is a variance between the allegations and proof in this, that defendant is charged with having received money, whereas the proof shows that he received a check. There is also some conflict in the adjudicated cases upon this proposition; but we think the better rule is that, under such circumstances as we have here, the defendant should be held to have received money from the insurance association at the place where the check was cashed by the bank upon which it was drawn, the intermediate bank which took it up or advanced defendant the money thereon being defendant's agent to forward the same and to receive the money thereon for the defendant, and that the final payment by the bank upon which it was drawn, was a payment to the defendant. *State* v. *Palmer* and *Com.* v. *Wood, supra.* See also, *People* v. *Dimick, supra.* But, however this may be, there was no variance under any of the cases to which our attention has been called, for the reason that defendant did in fact receive money from the plaintiff; the check simply being an instrument through which the money was received. This may not be the rule as to foreign bills of exchange or other papers to which the law merchant is fully applicable; but as to checks, which are ordinarily nothing more than equitable assignments of a fund, this seems to be the more logical view."

In *State* v. *Germain,* 54 Or. 395, 103 Pac. 521, upon an indictment for obtaining money by false pretense, the court said: "It was claimed on the argument that there was a variance between the indictment and the proof, as the evidence showed that Clinesmith gave defendant his check

on a Portland bank, while the indictment alleges that the defendant received money. The evidence also shows that the defendant cashed the check before he was arrested. The check was the mere vehicle by which the defendant was enabled to obtain Clinesmith's money, and there was no variance."

To the same effect are the cases of *People* v. *Dimmic,* 107 N. Y. 13, 14 N. E. 178; *Bates* v. *State,* 124 Wis. 612, 103 N. W. 251, 4 Ann. Cas. 365; *Schaumloeffel* v. *State,* 102 Md. 470, 62 Atl. 803.

We recognize the rule that certainty to a reasonable extent is an essential requirement of criminal pleading. One of its objects is to give notice to the party of the nature of the charge. We are unable, however, to see how there can be any danger of surprise in the present case, where the prisoner is charged with stealing $174.00 from the Home Beneficial Association. The substance of such a charge is that the accused has fraudulently converted that sum of money to his own use, and whether it was done by means of a larceny at common law or by obtaining, by false pretenses, a check representing the money, which he has cashed, can make no difference in regard to taking the accused by surprise. As said by Judge Moncure in *Anable's Case:* "He knows what the law is, and that if it be proved that he effected his criminal intent by either of the means mentioned he will be convicted of larceny, and he must be prepared to meet that proof if he can."

"One of the chief objects of our criminal statutes is to prevent the acquittal of guilty persons on account of some nice technical distinction between the offense charged and the offense proved against a person accused of crime." *Anable's Case, supra.*

We are of opinion that the plaintiff in error has not been prejudiced by the judgment complained of, and it is affirmed.

*Affirmed.*