# Richmond

RICHARD BATEMAN, ETC. v. COMMONWEALTH OF VIRGINIA.

November 30, 1964.

Record No. 5891.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

*Robert B. Kendall* (*Herman A. Sacks; Sacks, Sacks & Kendall,* on brief), for the plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General* (*Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

At the April, 1963, term of the Corporation Court of the City of Norfolk, Part Two, nine indictments were returned against Richard Bateman, alias Richard Morgan Bateman. Each of eight indictments, numbered 1, 2, 3, 4, 5, 6, 7 and 9 contained four separate counts, charging four separate offenses to-wit: Count One, forgery of a certain check signed by Jerry H. Adams by raising the amount thereof; Count Two, uttering such check; Count Three, larceny of the amount of the said check from Jerry H. Adams; and Count Four, larceny of the amount of the check from the National Bank of Commerce of Norfolk. There were eight checks involved in the eight indictments. Each check bore a different date and each was made payable in a different amount. The remaining indictment, No. 8, contained four counts, of the same nature as those in the above eight indictments, relating to a check of Jerry H. Adams not involved in the other indictments, and also a fifth count charging grand larceny of the amount of the check from Edward F. Chinchello.

Bateman was tried first on the last mentioned indictment, No. 8, and acquitted by a jury on all five counts.

Subsequently, with his consent and that of counsel of his own choosing and also of the Attorney for the Commonwealth, he was tried on the eight remaining indictments at the same time and with the same jury. On the third and fourth counts of each of the indictments, the Commonwealth elected to try him on the charge of obtaining money by false pretenses. Code, § 18.1-118. The defendant pleaded not guilty to each indictment and each count thereof. The jury found him not guilty under Indictments 1, 2, 4, 5, 6 and 7.

On Indictment No. 3 he was found guilty on the first, second and third counts, that is, of forgery, of uttering the forged check, and of larceny of the sum of $205.00 from Adams, and his punishment fixed at six months in jail on each count. He was found not

guilty of the fourth count charging larceny from the National Bank of Commerce.

Under Indictment No. 9, he was found guilty on the first, second and third counts, that is,, of forgery of the check, uttering the forged check, and larceny of $610.00 from Adams, and his punishment fixed at two years in the penitentiary on each count. He was found not guilty of the charge in count four, that is,, for the larceny of the money from the National Bank of Commerce.

The court entered judgment according to the verdicts. The defendant excepted, and we granted this writ of error.

The material facts may be summarized as follows:

Bateman and Adams became acquainted with each other about one year prior to the time of the commission of the offenses charged in the indictments. Adams had recovered approximately $7,000.00 in payment for personal injuries he had received in an accident, and had deposited the money in the National Bank of Commerce to the credit of himself and his mother. Adams and the defendant began to "hang around together." Adams was physically unable to drive an automobile. He was driven by Bateman in the latter's automobile "most of the time" to various places in the area of Norfolk for recreation and entertainment. All expenses incurred were usually paid by Adams, who issued checks on his bank for that purpose. He said that because he "didn't know how to fill them out" he had Bateman fill them out, except for his (Adams') name. Adams could write but not "well."

In February, 1963, he signed a number of checks for various small sums, payable to Bateman or to "Cash." Bateman took the checks and cashed them. When the checks, mentioned in the indictments, were returned by the National Bank of Commerce as paid by it, Adams discovered that they had been raised in various amounts. When Bateman filled out the checks, he left a blank space between the dollar signs on the checks and where he put the figures originally requested by Adams, and also left a space between the left-hand margin of the check and where he began the writing of the amount; and later inserted other figures and writing in the blank spaces.

Bateman admitted to police officers that he cashed the two checks here involved, bearing his signature as endorser. He denied cashing checks not made out to him, as payee, although they bore his signature as endorser. However,, the persons who cashed those checks identified Bateman as the person who received the money therefrom.

Specifically, it was shown that under Indictment No. 3, a check dated February 14, 1963, payable to Bateman, was signed by Adams as made out for $5.00; but was thereafter raised to $205.00. Bateman filled in all the writing on the check, except the signature of Adams, and thereafter cashed it. The bank paid the check and charged it to the account of Adams.

Under Indictment No. 9, a check dated February 27, 1963, made out for the sum of $10.00, payable to "Cash," when signed by Adams was subsequently raised to $610.00. This check was written by Bateman, except for the signature of the maker, and thereafter endorsed by Bateman and cashed by him for the sum of $610.00. The bank paid this amount to Bateman and charged it to the account of Adams.

Bateman did not testify, nor present any evidence in his behalf.

Upon appeal Bateman assigns numerous grounds of error. However, in his brief and argument, he relies principally on the assignments that the trial court erred: (1) in imposing "separate penalties on each count of the indictments upon which he was found guilty;" (2) in holding that he could be "found guilty of both forgery and uttering," and punished separately for each offense; (3) in holding that he could be found guilty of forgery of the checks and also the larceny of the proceeds of the checks from the person whose name was forged thereto; and (4) in granting Instruction C-4.

We will consider the assignments of error in the order in which they above appear.

I

■ Was it error to allow several felonies to be charged in separate counts in one indictment? We think not.

Each of the counts charged in the several indictments alleged a separate offense. The offenses charged in the counts were of the same general nature and connected with the same transaction. No objection was made by the defendant before the verdict to the inclusion of separate counts in each of the indictments, nor to the trial of all the counts in the indictments at one time in one trial. Virginia Code, 1950, § 19.1-165. On the other hand, the defendant specifically agreed to one trial, and this necessarily included the trial of all the counts in the indictments.

"Where one or more of the acts are committed at a certain time, and other or the same acts are committed at a different time, the

pleader may charge them in different counts, and if they are proved, the defendant may be convicted of the several offenses so committed on different occasions and punished for each offense." *Morganstern* v. *Commonwealth*, 94 Va. 787, 790, 26 S. E. 402.

"There is no reason on principle, however, why even two felonies of the same nature and punishable in the same manner may not be charged in different counts of the same indictment." *Pine* v. *Commonwealth*, 121 Va. 812, 839, 93 S. E. 652; 9 Mich. Jur., Indictments, Informations and Presentments, § 42, pages 694 *et seq.*

See also *State* v. *Larue*, 98 W. Va. 677, 128 S. E. 116.

## II

May an accused be found guilty of both forgery and uttering the forged instrument, if each offense is charged in a separate count in the same indictment? The answer is "Yes."

Section 18.1-96, Code of Virginia, 1960, provides as follows:

"If any person forge any writing, * * * to the prejudice of another's right, or utter, or attempt to employ as true, such forged writing, knowing it to be forged, he shall be confined in the penitentiary * * *."

The statute lists two offenses in the disjunctive: one, forgery and the other, uttering or attempting to employ as true a forged writing.

In *Johnson* v. *Commonwealth*, 102 Va. 927, 929, 46 S. E. 789, we said:

"It is well settled that forging and uttering are separate and distinct offenses. Indeed, the statute makes them separate and distinct. It is equally well settled that each of these offenses may be charged in separate counts of the same indictment. It is also true that the jury may find the prisoner guilty upon each count and ascertain the punishment for each offense separately."

See also *Branch* v. *Commonwealth*, 184 Va. 394, 35 S. E. 2d 593; *Benton's Case*, 91 Va. 782, 788, 21 S. E. 495; *Speers' Case*, (58 Va.) 17 Gratt. 570; 23 Am. Jur., Forgery, § 66, page 708.

"Forgery is the false making or material alteration, with the intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy." *Hanbury* v. *Commonwealth*, 203 Va. 182, 187, 122 S. E. 2d 911.

The word "utter" is defined in Black's Law Dictionary, 4th ed., page 1716, as meaning "To put or send [as a forged check] into

circulation. * * * to utter and publish." It is an assertion by word or action that a writing known to be forged is good and valid.

## III

■ May one be found guilty of forgery and of uttering the forged check and of the larceny of the proceeds of the check? The answer is "Yes," if the evidence sustains each charge.

The evidence necessary to establish forgery or uttering a forged instrument is not the same required to establish larceny. One may attempt to employ as true a forged instrument, yet not be guilty of larceny if he obtained no money or property by his action.

"A test of the identity of acts or offenses is whether the same evidence is required to sustain them; if not, then the fact that several charges relate to and grow out of one transaction or occurrence does not make a single act or offense where two separate acts or offenses are defined by statute, * * *." *Hundley* v. *Commonwealth*, 193 Va. 449, 451, 69 S. E. 2d 336.

Section 18.1-118, Code of 1950, provides:

"If any person obtain, by any false pretense or token, from any person, with intent to defraud, money or other property which may be the subject of larceny, he shall be deemed guilty of larceny thereof; * * *."

It is well settled in this jurisdiction that proof that the accused obtained money by false pretenses will sustain an indictment for larceny. *Lewis* v. *Commonwealth*, 120 Va. 875, 91 S. E. 174.

Here there was a manifest intent to defraud. There was an actual fraud, and the fraud was accomplished by means of the false pretense that the checks of Adams were made for given amounts, which was untrue. The fraud was practiced on Adams, and although the National Bank of Commerce cashed the checks, it paid out the money from the account of Adams deposited in the bank.

## IV

■ Did Instruction C-4 constitute reversible error? We think it did.

Instruction No. 4 reads as follows:

"The Court instructs the jury that where one is in possession of a forged instrument, and endeavors to obtain money thereon, this raises a presumption that such person forged the same, and unless

such possession or forgery is satisfactorily explained, the presumption becomes conclusive."

In *Bullock* v. *Commonwealth*, decided by this Court on October 12, 1964, 205 Va. 558, 138 S. E. 2d 261, we held that an identical instruction was erroneous. There we said:

"Aside from the improper direction that the 'presumption becomes conclusive,' the instruction placed upon the defendant the burden of explaining the 'possession or forgery' of the instrument. While the defendant, if innocent, might have satisfactorily explained his *possession* of the instrument, it is difficult to see how he could have explained the *forgery*.

"The instruction should have told the jury that the unexplained possession of a forged instrument by one who endeavors to obtain money thereon is prima facie evidence that such person forged the instrument, but that such prima facie evidence may be rebutted by an explanation satisfactory to the jury as to how he came into possession of the instrument."

We find no merit in the remaining assignments of error, but for the error in granting Instruction C-4, the judgment is reversed; the verdicts set aside; and the case remanded for a new trial.

*Reversed and remanded.*