COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Bumgardner
Argued at Salem, Virginia


PATRICIA A. HUTCHINGS, SOMETIMES KNOWN AS
 PATRICIA ANN HUTCHINGS
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2066-98-3      JUDGE RUDOLPH BUMGARDNER, III
                                         NOVEMBER 9, 1999
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                      Charles J. Strauss, Judge

              Greg T. Haymore (Brian H. Turpin, P.C., on
              brief), for appellant.

              (Mark L. Earley, Attorney General; Richard B.
              Smith, Assistant Attorney General, on brief),
              for appellee.  Appellee submitting on brief.


     Patricia Ann Hutchings was convicted during a bench trial

of uttering a forged check and petit larceny in violation of

Code §§ 18.2-172 and 18.2-96.  The trial court dismissed a

companion charge of forgery.  The issue on appeal is whether the

evidence is sufficient to prove that the defendant knowingly

presented a forged check.  Finding the evidence sufficient, we

affirm her conviction.

     The defendant presented the owner of G & S Market, Alice

Bolling, a check for $50 in exchange for merchandise and cash.

Bolling knew the defendant and had cashed checks for her in the

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

past. The check, which Bolling said looked like a real check, was signed by D.M. McVaughan, typed payable to the defendant, and endorsed by her in the store. Bolling's bank did not honor the check because it did not have a bank routing number or an account number.

Bolling left three telephone messages for the defendant and sent her a letter demanding payment when she did not return the calls. The defendant wrote Bolling that she would pick the check up, but she never did.

The check purported to be drawn on an account with First Federal Savings Bank in Lynchburg. The vice president and branch manager of the successor bank testified that the check was not a proper one. It did not have a routing number and did not have a proper account number. The supposed account number designated a savings account that was closed and appeared incorrectly at the top right corner. Two different account numbers appeared on the check, and it lacked a federal reserve tracking code. The bank officer could not say when the savings account was closed, but said that he would classify the check as a counterfeit.

Sergeant Daniel Dennis investigated the store's complaint and spoke with the defendant. She told him that she received the check for work she had done but refused to identify the person who gave her the check. She said she did not want to get them into trouble. When asked if she had any more of these

-

checks, the defendant said, "I don't think any more of these checks is out."  The defendant denied knowing anyone named D.M. McVaughan.  The defendant paid the check and related fees before the warrant was served.

At trial, the defendant testified that her cousin, Crystal Green, had given her the check.  Green lives in New Jersey and stayed with the defendant for a few weeks, but had "disappeared again."  The defendant testified she did not know that the check was drawn on a nonexistent account or that it was counterfeit. She admitted signing and endorsing the check in the store, but denied telling the investigator that she received it for work she had done.

In her brief, the defendant argues that she cannot be convicted of uttering a forged instrument because the trial court did not find that the check was forged.  The trial court ruled that the evidence was insufficient to prove that she forged the check.  The trial court dismissed the forgery charge because the defendant had not committed forgery by signing her name to endorse the check.  It did not dismiss the charge because the Commonwealth failed to prove the writing was a forgery.

The defendant argues the evidence is insufficient to prove that she had the requisite intent to commit larceny.  Because this issue was not presented to the trial court, we will not consider it for the first time on appeal.  See Rule 5A:18.

-

The crimes of forgery and uttering are separate and distinct offenses.[1]  See Bateman v. Commonwealth, 205 Va. 595, 599, 139 S.E.2d 102, 105 (1964).  Uttering "is an assertion by word or action that a writing known to be forged is good and valid."  Id. at 600, 139 S.E.2d at 106.  In order to prove uttering the Commonwealth must establish that at the time the check was tendered for payment, the defendant knew it to be forged.  Possession of a forged check permits the inference that the defendant knew it was forged.  See Denis v. Commonwealth, 144 Va. 559, 590-92, 131 S.E. 131, 140-41 (1926) (trial court properly refused instruction which stated that defendant's possession of forged instrument does not raise presumption that he forged it); Walker v. Commonwealth, 25 Va. App. 50, 59, 486 S.E.2d 126, 131 (1997).

When drawing reasonable inferences from the facts, the fact finder "was entitled to weigh the defendant's contradictory statements," Toler v. Commonwealth, 188 Va. 774, 781, 51 S.E.2d 210, 213 (1949), and to infer that she was attempting to conceal her guilt.  See Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981).  This rule is consistent with the appellate court's duty to "discard the evidence of the accused

---

[1] Code § 18.2-172 provides, in part, that "[i]f any person forge any writing . . . to the prejudice of another's right, or utter, or attempt to employ as true, such forged writing, knowing it to be forged, he shall be guilty of a Class 5 felony."

-

in conflict with that of the Commonwealth, and to regard as true all the credible evidence favorable to the Commonwealth and all favorable inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 497, 270 S.E.2d 755, 759 (1980) (emphasis in original). See LaPrade v. Commonwealth, 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950). The trial court's ruling will not be disturbed on appeal unless plainly wrong or unsupported by the evidence. See Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

Viewed in the light most favorable to the Commonwealth, the evidence established that the defendant possessed a check with two different account numbers on it, purportedly drawn on a Lynchburg bank, typed payable to her, and signed by D.M. McVaughan, whom she did not know. The check, an exhibit available to the fact finder, looked spurious: all characters were in the same plain font with the bank name and address in boldface, account numbers were incorrectly placed, and a full row of "x"s appeared across the bottom of the check. The defendant tendered the check in a store where she was known and had cashed checks previously. She informed the investigator that she received the check for work she had done, but would not name the person who gave it to her. She stated that there were no other checks like this one. When asked to explain that statement, the defendant responded, "[t]hat was just an

-

expression.  I mean, I don't know. . . . I mean I didn't have another check."

At trial, the defendant testified that she got the check from her cousin.  Despite the fact that the cousin resided in New Jersey, the defendant did not question the cousin's possession of a check drawn on a Lynchburg account typed payable to the defendant.  She denied telling the investigator that she received the check in payment for work performed.

The bank officer testified the check was counterfeit.  Though the defendant argues the testimony was a lay opinion, she made no objection at trial.  We will not consider it now.  <u>See</u> Rule 5A:18.  The bank officer's testimony was not the only evidence that the check was counterfeit.  It looked like a fake, and the trial court could see that for itself.

Considering all the evidence, we find it sufficient to prove that the defendant knew the check was forged.  Accordingly, we affirm her conviction for uttering.

<u>Affirmed.</u>

Benton, J., concurring.

Based upon her negotiation of a purported negotiable instrument, see Code § 8.3A-104, Patricia Ann Hutchings was indicted on charges of forgery, see Code § 18.2-172, uttering, see id., and grand larceny, see Code § 18.2-96.  I agree with the majority that the trial judge's finding that Hutchings was not guilty of forgery did not dispose of the uttering charge. The charges of uttering and forgery are separate and distinct. See Code § 18.2-172.  Thus, "one [may] be found guilty of forgery and of uttering the forged check."  Bateman v. Commonwealth, 205 Va. 595, 599-600, 139 S.E.2d 102, 105-06 (1964).  The trial judge found that Hutchings negotiated a check knowing it was forged but that she did not forge the check.

The evidence proved that the check Hutchings negotiated at the store was "returned unpaid" because the check did not contain the federal reserve bank "routing number" and "[did not] have the proper account number on it."  The Vice President of First Federal Savings Bank, the payor bank that is now known as One Valley Bank, testified that "[t]here was a statement savings account with that number on it."  When asked whether that account was closed, he responded, "I'm not sure about the closure of it."

This evidence does not prove the check was forged.  It only proves that the check was drawn on a First Federal Savings Bank account, which was closed at an undisclosed time, and that the

-

check lacked the routing numbers that would identify the bank using the usual Federal Reserve Bank numerical designations.  I believe, however, that other evidence tends to prove Hutchings negotiated the check knowing it was a forgery.

During the investigation, Hutchings told the police officer that "she got the check for some work she had done."  She refused to disclose the name of the person who gave her the check because "she didn't want to get them in trouble."  At trial, Hutchings testified that the check was not hers.  She testified that she received the check from her cousin, Crystal Green, who lived in New Jersey and was staying with Hutchings for a few weeks.  Hutchings negotiated the check "because [she was] . . . trying to help [her cousin]."  She also testified that she did not know D.M. McVaughan, the purported maker of the check.  Further, she denied having told the police officer that she received the check for work she had performed.

This evidence was sufficient for the trier of fact to find that Hutchings knew the check was a forgery.  Although the check was payable to her, she said it was not her check.  Furthermore, the check was drawn on the Lynchburg bank account of a person she did not know, and it was given to her by a cousin for no apparent reason.  See Fitzgerald v. Commonwealth, 227 Va. 171, 174, 313 S.E.2d 394, 395 (1984) (noting that the circumstances may prove knowledge of forgery).  The act of putting the check into circulation knowing it was forged "constituted an uttering

-

. . . within the prohibition of [the] Code."  Moore v.

Commonwealth, 207 Va. 838, 842, 153 S.E.2d 231, 234 (1967).

Accordingly, I concur in affirming the conviction.