COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Humphreys, Alston and Decker
Argued at Richmond, Virginia

BRIAN LAMONT MOORE

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1705-13-2                      JUDGE ROSSIE D. ALSTON, JR.
                                                    SEPTEMBER 9, 2014
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Gary A. Hicks, Judge

Dannie R. Sutton, Jr. (McDonald, Sutton & DuVal, PLC, on brief),
for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Brian Lamont Moore (appellant) appeals his convictions of forgery, uttering, and grand

larceny. Appellant contends that the evidence was insufficient to support the convictions

because the Commonwealth did not prove that he wrote on or modified the check, passed the

check to another person, or took property valued over $200. For the reasons that follow, we

affirm appellant's convictions.

I. Background[1]

When reviewing a challenge to the sufficiency of the evidence to support a conviction,

this Court views the evidence in the light most favorable to the Commonwealth as the prevailing

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As the parties are fully conversant with the record in this case and because this
memorandum opinion carries no precedential value, this opinion recites only those facts and
incidents of the proceedings as are necessary to the parties' understanding of the disposition of this
appeal.

party below, granting to it all reasonable inferences drawn from that evidence. See Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997).

So viewed, the evidence at trial indicated that on August 3, 2012, a check purportedly issued by JPN Enterprises and made payable to Jason Price was cashed at a Bank of America for $1,748. It was later determined that the check was not issued by JPN Enterprises. The owner of JPN Enterprises, Brog Gandhi, denied writing or authorizing the check and testified that he did not know Jason Price.

In addition to JPN Enterprises, Gandhi also owned an interest in a Hotel Inn located in Henrico County. The financial accounts for both businesses were managed by Robert Peters, the hotel's general manager. The accounts were kept separate. Gandhi and Peters both explained that hotel expenses (specifically employee loans) were paid out of the hotel account exclusively.

Because of his responsibilities for both companies, Peters kept in his office checks pre-stamped with Gandhi's signature. On July 23, 2012, Peters discovered that checks from both the hotel and JPN Enterprises accounts were missing from his office. He promptly investigated the missing checks, which included reviewing surveillance video taken from a hotel security camera facing his office.

At trial, the Commonwealth introduced still photographs taken from the security camera. The pictures were date stamped July 21, 2012. Peters described the images portrayed in the series of photographs during his testimony: "I actually see [appellant] coming in the . . . executive office door . . . and going towards my office, which is [at] the bottom of the left corner [of the photograph]." Appellant was employed by the hotel as a banquet chef at that time. The pictures did not show appellant entering Peters' office, but Peters testified that he observed appellant entering his office when he watched the surveillance video. Peters testified that he

never gave appellant permission to enter his office and further stated that appellant had no reason to enter his office on July 21, 2012.

At trial, the Commonwealth also offered the testimony of Christopher King and Jason Price. King, who knew appellant through a mutual friend, testified that appellant approached him in early August 2012 about a check transaction. Appellant explained that he could not cash his payroll check because he owed the bank money and asked King if he would cash it for him. King declined, explaining that he, too, owed money to the bank. Appellant asked whether King knew anyone who could cash the check and informed King that his employer "would . . . make the check out to whoever could do it." Eventually, Jason Price agreed to cash the check for appellant.

Appellant provided King and Price a check made payable to Price and drawn on the account of JPN Enterprises. King testified that he and Price then "went up to the bank" and later called appellant when they had his money. Later in his testimony, King testified that appellant rode to the bank with King and Price. Price entered the bank alone and returned minutes later with an envelope. King did not observe the contents of the envelope, but he did see Price hand the envelope to appellant.

Price testified that he agreed to cash appellant's check as a favor to King. The check was "written out" when Price received it from appellant, though Price did not know by whom. Price testified that upon entering the bank he cashed the check and observed the teller place the "full amount of the check" in an envelope,[2] which he later handed to appellant. Price denied taking any money from the envelope.

---

[2] At trial, the Commonwealth proffered the testimony of the bank teller who cashed the check. If called to testify, she "would have confirmed that she gave $1,748 in United States currency when she cashed the check" that Price presented. Appellant stipulated to this proffer.

During cross-examination, Price acknowledged that he was indicted on felony charges related to his involvement in this case. He explained that the charges were "on hold" pending the completion of appellant's trial and that he was hoping to receive favorable treatment as a result of his testimony. Price also testified that he had been previously convicted of a crime of moral turpitude.[3]

Following the Commonwealth's case-in-chief, appellant made a motion to strike. He argued that the evidence showed only that Price passed the check and received the funds from the teller. Appellant asserted that the Commonwealth failed to prove that he altered the check, presented the check as valid, or took property of another. The trial court denied appellant's motion.

Robert Bell, an officer with the Henrico County Police Department, who investigated the check drawn on JPN Enterprises' account, testified for appellant. Bell testified that he interviewed Price about the check in mid-August. Bell further testified that he prepared a photo lineup, which he showed to Price during the interview. Price was unable to identify appellant.

Appellant also testified on his own behalf, explaining his presence on the surveillance video and his possession of the check. Appellant testified that he checked his office mailbox, which was located in the executive office suite, "[e]very day, every morning," including the morning captured on the hotel surveillance video. He denied entering Peters' office. He also explained that he received a loan check from Peters for $800 on July 18, 2012.[4] Stuck to the back side of the check, appellant testified, was a second, blank check. Appellant testified that he told his roommate and King about the blank check, and King purportedly asked that appellant

_____

[3] King also testified during cross-examination that he had been previously convicted of a felony.

[4] Gandhi and Peters confirmed in their testimony that they offered loans to employees, which were later deducted from the employees' wages. Both men reiterated that loans were paid through the hotel account exclusively.

give him the check. Appellant took no efforts to inform Peters about the blank check, choosing instead to leave the check on a desk in his room. Appellant testified that he had no additional contact with the check. Appellant admitted during cross-examination that he had numerous prior felony convictions.

At the close of his case, appellant renewed his motion to strike, which the trial court again denied. Appellant was subsequently convicted of each charge and sentenced to a total term of imprisonment of eleven years and eighteen months, with eleven years and twelve months suspended.

This appeal followed.

## II. Analysis

### A. Standard of Review

When the sufficiency of the evidence is challenged on appeal, "we review the evidence in the light most favorable to the Commonwealth, according it the benefit of all reasonable inferences fairly deducible therefrom." Singleton v. Commonwealth, 278 Va. 542, 548, 685 S.E.2d 668, 671 (2009) (citation omitted). We "'presume the judgment of the trial court [is] correct,' and 'will not set it aside unless it is plainly wrong or without evidence to support it.'" Chambliss v. Commonwealth, 62 Va. App. 459, 465, 749 S.E.2d 212, 215 (2013) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)). This Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). Instead, we ask only whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

B. Forgery

Appellant contends that the "Commonwealth's evidence raised a mere suspicion that . . . Appellant forged the check[,] which was not sufficient to meet its burden" to prove appellant's guilt beyond a reasonable doubt. He contends that the evidence was insufficient to support his conviction of forgery because the Commonwealth's witnesses did not testify that they observed appellant modifying the blank check or that they recognized appellant's handwriting on the check.

To sustain a conviction for forgery in violation of Code § 18.2-172,[5] the Commonwealth must prove that the accused falsely made or materially altered a writing that, if genuine, might be of legal efficacy. See Fitzgerald v. Commonwealth, 227 Va. 171, 173, 313 S.E.2d 394, 395 (1984). The Commonwealth may establish this fact by either direct or circumstantial evidence. See Britt v. Commonwealth, 276 Va. 569, 573, 667 S.E.2d 763, 765 (2008) (stating that circumstantial evidence is entitled to as much weight as direct evidence when sufficiently convincing). Indeed, it is often the case that circumstantial evidence is "the only evidence [that] the nature of a case permits." Braxton v. Commonwealth, 209 Va. 750, 752, 167 S.E.2d 120, 121 (1969) (citing Toler v. Commonwealth, 188 Va. 774, 780, 51 S.E.2d 210, 213 (1949)). When the Commonwealth relies on circumstantial evidence, "'[w]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (quoting Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991)).

---

[5] Code § 18.2-172 states, in relevant part, "[i]f any person forge any writing . . . to the prejudice of another's right, or utter, or attempt to employ as true, such forged writing, knowing it to be forged, he shall be guilty of a Class 5 felony."

The evidence adduced at trial proved that appellant had exclusive possession of a blank check drawn on the account of JPN Enterprises. Appellant was observed entering Peters' office (where the checks were stored) shortly before the checks were discovered missing. Appellant later presented to Price and King a check drawn on the account of JPN Enterprises, which Gandhi testified appellant was not authorized to possess. Gandhi and Peters explained in their testimony that the hotel and JPN Enterprises accounts were kept separate (hotel expenses were paid out of the hotel account exclusively) and appellant was not paid through the JPN Enterprises account. Gandhi also testified that he neither wrote nor authorized a check made payable to Jason Price.

The evidence also established that appellant later provided Price with a check drawn on the account of JPN Enterprises that was "already written out" and "made payable to Price." This followed appellant's repeated efforts to find someone to cash the check for him and his statement that the check could be made out "to whoever could do it."

From this evidence a reasonable fact finder could find that the check was altered while in appellant's exclusive possession and reasonably infer that appellant altered it.

Even so, appellant contends that the evidence "was not sufficient to disprove" his version of the events and therefore insufficient to support his conviction. Appellant argues that the blank check was stuck to the back side of a check he legitimately acquired from Peters. Appellant testified that he told King about the blank check, that King asked for the check, and that King (among others) had access to the check. According to appellant, he never altered the check and never attempted to cash it. Appellant therefore alleges that the evidence was not inconsistent with his innocence.

"The issue upon appellate review is not whether there is some evidence to support [appellant's] hypotheses. The issue is whether a reasonable jury, upon consideration of all the

- 7 -

evidence, could have rejected [appellant's] theories in his defense and found him guilty . . . beyond a reasonable doubt." Hudson, 265 Va. at 513, 578 S.E.2d at 785. The evidence presented at trial was sufficient to permit such a finding. A reasonable fact finder could conclude from the evidence that appellant was not authorized to have the check at issue and that he did not acquire it legitimately, as Gandhi testified that hotel employees were never paid through the JPN Enterprises account. Similarly, the fact finder could conclude that appellant forged the check. The JPN Enterprises check appellant possessed was pre-stamped with Gandhi's signature but otherwise blank. Appellant solicited King and Price to help him cash the check, stating that the check could be made payable "to whoever could do it." The testimony of King and Price confirmed that appellant later presented a check "written out" and "made payable to Price."[6] That evidence was sufficient to permit a reasonable fact finder to find beyond a reasonable doubt that appellant forged the check.

For the foregoing reasons, we find that the evidence was sufficient to permit a reasonable trier of fact to conclude that appellant was guilty of forgery beyond a reasonable doubt.

### C. Uttering

Appellant also contends that the evidence presented at trial was insufficient to convict him of uttering because "Price, [and] not Appellant, presented the forged check as valid to Bank of America." The Commonwealth, in response, argues that appellant uttered the forged check "when he passed the check to Price, representing that it was genuine." We agree with the Commonwealth.

---

[6] Appellant seeks to discredit the testimony of King and Price (who appellant casts as "two convicted felons"), but that exceeds the reach of our inquiry. The fact finder "had the opportunity to see and hear" the testimony as it was presented, and was permitted to credit the testimony of King and Price, see Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (stating that "the credibility of the witnesses . . . [is a] matter[] solely for the fact finder"), and to discredit the testimony of appellant (also a convicted felon), see Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) (stating that the trial court may "disbelieve the self-serving testimony of [appellant]").

Uttering is "'any assertion or declaration, by word or act, directly or indirectly, that [a] forged writing . . . is good, with such knowledge and intent . . . [,] provided that such assertion or declaration was made in the prosecution of the purpose of obtaining the [object] mentioned in the . . . writing.'" Bennett v. Commonwealth, 48 Va. App. 354, 357, 631 S.E.2d 332, 333 (2006) (quoting Sands v. Commonwealth, 61 Va. (20 Gratt.) 800, 823-24 (1871)). It is not necessary that the accused fully negotiate the forged document in order to be convicted of uttering. See id. at 358, 631 S.E.2d at 333-34. Nor is it required that the accused place the check into circulation. See id. The crime of uttering is complete upon "an assertion by word or action that a writing known to be forged is good and valid." Bateman v. Commonwealth, 205 Va. 595, 600, 139 S.E.2d 102, 106 (1964).

Here, the evidence supports the fact finder's conclusion that appellant uttered a check he knew to be forged. As addressed above, the evidence was sufficient to prove that appellant forged the check at issue. See Walker v. Commonwealth, 25 Va. App. 50, 59, 486 S.E.2d 126, 131 (1997) (noting that in the context of uttering, "possession of [a] forged check allows the inference that [the accused] knew it to be forged"). Appellant thereafter held out the check as "good and valid" when he solicited Price's assistance cashing what appellant referred to as his "payroll check." See Bateman, 205 Va. at 600, 139 S.E.2d at 106. That Price, rather than appellant, cashed the check is no defense. Bennett, 48 Va. App. at 358, 631 S.E.2d at 333-34 (stating that it is not required that the accused fully negotiate the instrument to commit uttering). The crime was completed when appellant represented the check as valid for "'the purpose of obtaining the [object] mentioned in the . . . writing.'" Id. at 357, 631 S.E.2d at 333 (quoting Sands, 61 Va. (20 Gratt.) at 823-24).

Appellant argues in the alternative that the evidence was still insufficient to convict him of uttering because King and Price "knew or should have known that the check was suspicious,"

which prevented appellant from credibly passing off the forged check as valid. Appellant, however, fails to develop his argument beyond this conclusory statement. In addition, his argument also is unsupported by citation to either the record or case law. See Rule 5A:20(e) (requiring appellant to include in the opening brief "the argument[,] including principles of law and authorities[,] relating to each assignment of error"). Because "[u]nsupported assertions of error 'do not merit appellate consideration,'" we do not consider this contention. See Jones v. Commonwealth, 51 Va. App. 730, 734, 660 S.E.2d 343, 345 (2008) (quoting Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992)).

From the evidence presented, a reasonable fact finder could find that appellant asserted by "word or action that a [check he knew] to be forged [was] good and valid." Bateman, 205 Va. at 600, 139 S.E.2d at 106. We therefore affirm appellant's conviction of uttering.

### D. Grand Larceny

Appellant next asserts that the Commonwealth "did not prove that Appellant deprived JPN Enterprises of property valued at over $200[]." He contends that the Commonwealth's witnesses "suspected that the envelope [received from the bank teller] contained an amount of cash exceeding $200[]" but that the witnesses did not have "personal knowledge of the envelope's contents." Because the Commonwealth was required to prove that the value of the stolen property was equal to or exceeded $200, appellant contends that the evidence was insufficient to support his conviction. See Code § 18.2-95 (defining grand larceny as the taking of goods valued at $200 or more); see also Dunn v. Commonwealth, 222 Va. 704, 705, 284 S.E.2d 792, 792 (1981).

Contrary to appellant's assertion, multiple witnesses had personal knowledge of the envelope's contents and testified to such at appellant's trial. Price identified at trial a copy of the check he cashed for appellant, which was made payable to Price in the amount of $1,748. Price

further testified that when he cashed the check he observed the teller place the "full amount of the check" in an envelope, which he later delivered to appellant. The parties also stipulated to the expected testimony of the bank teller, "[who] would have confirmed that she gave $1,748 in United States currency when she cashed the check" presented by Price.[7] This evidence was sufficient to permit a reasonable fact finder to conclude that appellant deprived JPN Enterprises of property valued in excess of the statutory minimum.

### III. Conclusion

For these reasons, we find that the evidence was sufficient to support appellant's convictions of forgery, uttering, and grand larceny. Accordingly, appellant's convictions are affirmed.

Affirmed.

---

[7] The Commonwealth represented at trial that the parties had stipulated to the expected testimony of the bank teller, which the Commonwealth proffered, as described above. Following the Commonwealth's proffer of the expected testimony, appellant characterized the Commonwealth's representation as "a fair and accurate" description of the "stipulation . . . that we've entered into with the Commonwealth in regards" to the teller. The trial court was permitted to consider this as evidence in the same light as if the witness had testified from the witness stand. See Artis v. Commonwealth, 213 Va. 220, 227, 191 S.E.2d 190, 195 (1972) (stating that "[i]f the benefit of the testimony of these witnesses was desired they should have been called, sworn and examined as witnesses, *or, by consent counsel could have stipulated that were the witnesses called their evidence would be substantially the same as that given by [previous witnesses]*" (emphasis added)).