COURT OF APPEALS OF VIRGINIA

Present: Judges Friedman, Frucci and Senior Judge Humphreys
Argued at Fredericksburg, Virginia


IGOR PETER KOOB

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0408-23-4                      JUDGE STEVEN C. FRUCCI
                                                    AUGUST 13, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
John M. Tran, Judge[1]

Alberto Salvado (Salvado Law, on briefs), for appellant.

Rosemary V. Bourne, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


        A jury convicted Igor Peter Koob of aggravated malicious wounding and assault and

battery. Following, the circuit court sentenced him to 40 years and 12 months of imprisonment.[2]

On appeal, Koob argues that the circuit court violated Code § 19.2-154 by not using the same judge

who presided over the trial to instruct the jury and accept the verdict. He also contends that the

circuit court did not properly poll the jury. Additionally, he challenges the sufficiency of the

evidence to sustain his convictions, maintains the circuit court abused its discretion in taking his

_____

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge Tran presided over the jury trial and ruled on Koob's motion to clarify the
procedural posture of the case and his motions to set aside the verdict. Also a subject of this
appeal is Judge Brett A. Kassabian's ruling over Koob's motion to set aside a non-unanimous
verdict.

[2] A grand jury indicted Koob of abduction, aggravated malicious wounding, and
strangulation. The circuit court granted Koob's motion to strike the abduction charge.
Additionally, the jury did not find Koob guilty of strangulation but instead convicted him of the
lesser-included offense of assault and battery.

motion to strike the evidence under advisement, and alleges defects in the indictment. Finally, Koob asserts error in the jury instructions and verdict form, raises a double jeopardy claim, and contends the prosecutor failed to prove its case beyond all reasonable doubt. Finding no circuit court error as asserted in Koob's 12 assignments of error, we affirm the judgment.

## I. BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

A. *The Evidence at Trial*

On August 4, 2021, L.S. rented Room 822 at the Ritz Carlton Hotel in Fairfax County, intending to work there as a prostitute. L.S. engaged clients through a website called "Eros." L.S. was working in the enterprise with Gage Hale, whom L.S. believed to be her boyfriend at the time. Customarily, Hale waited outside the hotel room in case L.S. needed help while she interacted with clients.

Koob contacted L.S. through the website, sent her a picture of himself, and called himself "Romnus." L.S. and Koob exchanged text messages and more photos, and they discussed meeting for her to provide services. When Koob reached the hotel, L.S. texted him the room number; Hale then left L.S. alone in the room.[3]

---

[3] At trial, L.S. affirmed that there was no other person hiding in Room 822.

L.S. answered Koob's knock at the door and invited him into the room. She was immediately alarmed by the look in his eyes. She tried to engage in friendly conversation and make Koob feel comfortable. Instead, Koob pulled out a knife and demanded to know "[w]here is she?" He pointed the knife at L.S. In response, L.S. "fought like hell" until she could not fight Koob anymore. She did not "have the chance" to stab Koob in return. L.S. was screaming for help as loudly as she possibly could, but Koob did not stop attacking her. L.S. ran toward the door. Koob pulled her backward and choked L.S. so that she could no longer voice cries for help. L.S. fell unconscious.

That night, Michael Wynn was staying in Room 824 at the hotel. Around 9:00 p.m., as he was returning to his room, Wynn saw L.S. admit Koob to Room 822. After Wynn entered his own room, he heard a "commotion" then a woman's voice in an excited tone. Shortly after, Wynn heard the female voice clearly and "seriously" crying for help. Wynn tried to call the hotel front desk but the phone was not working. Receiving no answer when he called the desk with his cell phone, Wynn left his room to get help. Within 30 seconds of arriving at the front desk, Wynn enlisted the help of the night manager, James Scanelle, and they took the elevator to the eighth floor.

Using a key to the room, Scanelle opened the door to Room 822. Koob immediately tried to push past him and out of Room 822. Koob was "covered in blood," and his hands were covered by a towel. No one other than Koob exited Room 822. Wynn ordered Koob, who was headed toward the elevators, to stop. Koob refused to show his hands. Koob said that he had been attacked. Wynn chased Koob down the hall and held him down on the floor. Hotel security guards arrived on the floor and ordered Wynn to get off Koob; when Wynn complied, Koob again tried to flee. Wynn tackled Koob again and removed the towel from his hands. Koob had "a bunch of stuff wrapped" hiding his hands.

L.S. was on the floor of Room 822 near the door; she was bleeding and unconscious. She had a puncture wound to her upper chest and was barely breathing. She had multiple puncture wounds to her face and chest and five stab wounds to her back. A wound to her chest punctured her lung. Inside the room, there was blood all over and furniture had been overturned.

Amadu Sangari was working security for the hotel on the night of the incident. After he arrived on the floor in response to the reported disturbance, Sangari encountered Koob and tried to move him toward the service elevator. Sangari blocked Koob from going down the stairway. Sangari gave Koob some towels for his hand wound, and the two entered the elevator. When Sangari said he was taking Koob to the lobby, Koob responded that he was bleeding and scared that he could lose his fingers.

Before he was transported from the scene, Koob claimed he was attacked by a male and a female in Room 822. Koob had a severe cut on one hand as well as cuts on the other hand.[4] Koob possessed the sheaf for a knife. In a trash can in the service area at the end of the hall where the rooms were located, the police found a bloody knife, a blood-stained washcloth, and blue latex gloves.

L.S. remembered nothing that happened from the time Koob choked her until she awakened in the hospital. She remained in the hospital in ICU for two weeks. When she was discharged from the hospital, she could not walk without assistance. On the date Koob's trial commenced (which was nine months after the attack), L.S. used a cane to walk and had another month of physical therapy remaining. When shown a photograph of one of the wounds on her body, L.S. acknowledged that she still had "a scar from that."

---

[4] In the incident, two tendons, each on two fingers of Koob's right hand, were severed. Koob had surgery to repair the injuries.

- 4 -

DNA testing showed that Koob's blood was on stains on the bathroom floor and trim of Room 822. Koob was also a contributor to the bloodstain on the nightstand, and L.S. was eliminated as a contributor to that mixture. Koob could not be eliminated as the major contributor to the blood on the handle and blade of the knife. However, both Koob and L.S. were major contributors to the blood staining on the knife blade. L.S.'s blood was found on Koob's right hand. Koob's shoes were also stained with L.S.'s blood.

Detective Chamberlain questioned Koob on the morning of August 5, 2021. The Commonwealth played the recorded interview for the jury as Exhibit 44. Koob claimed that after he entered the hotel room, a man jumped out of the bathroom, accosted him with a knife, and demanded money. When Koob refused, the man with the knife lunged forward. During a struggle for the knife, Koob's hand was cut. He said that "the girl" jumped on his back and tried to choke him. In the interview, Koob said he had been attacked by a Caucasian male with no facial hair.[5] Koob said that the man fled from the room after the attack. Koob stated that he was stopped by two other men after he left the room and showed them his bleeding hand.

On August 5, 2021, Koob placed a phone call from the jail. In the call, Koob explained that a girl had attacked him at the hotel and claimed he was innocent. He said that he told the police that "another guy" attacked him in the room but that was not true.

At trial, the Commonwealth introduced a photograph of a police officer speaking with a male near a "valet parking" sign at the hotel entrance. L.S. identified the male as Hale. The photograph was taken at about 10:30 p.m. after the police had been on the scene of the attack for about an hour. Hale did not appear to be armed or to have any injuries.

---

[5] Notably, Hale was an African-American man with a goatee.

B. *Pretrial Proceedings*

Before trial, Koob filed several motions *in limine* and to suppress evidence. Koob did not file any pretrial motion contending that the indictments were defective in any way, nor did he file a motion for a bill of particulars.

On October 21, 2021, the case was set for a three-day jury trial, at Koob's request, to begin on May 2, 2022. Koob's trial was scheduled for May 2 through May 4, 2022. On April 27, 2022, Koob's counsel filed a request for a four-day jury trial.

C. *The Trial Proceedings*

Judge John Tran presided at Koob's trial. On the second day of trial, Judge Tran advised counsel that he was considering having Judge Brett Kassabian step in to conclude the trial if the trial went into a fourth day; Koob did not object.[6] Later that day, Judge Tran announced to the jury that because he had other commitments, Judge Kassabian would preside if the trial continued into a fourth day. Neither of the parties raised an objection.

On the close of the third day of trial, Judge Tran said that he did not think it was proper for Judge Kassabian to instruct the jury. Judge Tran indicated he would instruct the jury, then Judge Kassabian could preside during closing arguments on a fourth day of trial. Judge Tran also indicated that he would take any defense motion to strike under advisement unless it was "clear" that he should grant the motion. Defense counsel responded, "Okay. Very good." Defense counsel further asked if the court could continue to take the motion to strike under advisement until after the verdict. The circuit court said that it could, and Koob did not object or disagree.

---

[6] In a post-trial opinion and order dated September 28, 2022, Judge Tran noted that the parties failed to comply with the established procedure of that circuit court to request an additional day to conduct the trial.

The parties reviewed jury instructions with the circuit court on the third day of trial, and only two were disputed. The first, Instruction 16, defined "disfigure" as "a permanent and not merely a temporary and inconsequential disfigurement. A scar may be viewed as a permanent and significant injury." The circuit court refused the instruction.

Koob had requested a jury instruction on incidental force relating to the abduction charge. Judge Tran provided counsel with a "working draft" of a jury instruction for abduction that was adopted as Instruction F, but it was not given because Judge Tran ultimately granted the motion to strike the abduction charge. Defense counsel drafted and agreed to a jury instruction that covered the aggravated malicious wounding charge and the lesser-included offenses of malicious wounding, unlawful wounding, and assault and battery. The instruction stated that, to establish aggravated malicious wounding, the Commonwealth was required to prove that Koob "stabbed and wounded" L.S. "with intent to kill or permanently maim, disfigure, disable" her. Instruction 13, governing the strangulation charge, permitted the jury to convict Koob of strangulation or the lesser-included offense of assault and battery. Judge Tran provided counsel with copies of the verdict forms. Defense counsel agreed to the waterfall instruction for aggravated malicious wounding.

In a written motion to strike the evidence filed on May 4, 2022, Koob asserted for the first time that the aggravated malicious wounding indictment was fatally defective and should be dismissed, because it charged the intent to prove the crime in the disjunctive rather than the conjunctive. The motion also stated that the indictment did not provide sufficient notice of the offense with which he was charged, namely causing L.S. "bodily injury" by a means other than stabbing. Judge Tran took the motion to strike under advisement and asked the Commonwealth to respond in writing. The judge scheduled a hearing upon the motion for June 3, 2022.

Following, Judge Tran granted Koob's motion to strike the abduction charge but denied the motion to strike the strangulation charge.

On May 4, 2022, at the end of all the evidence, Judge Tran read the instructions to the jury. Judge Tran also reviewed the two verdict forms with the jury. However, after the judge excused the jury for the evening, defense counsel noted that the verdict form for strangulation had not included the option for the jury to convict Koob of the lesser-included offense of assault and battery. As a result, Judge Tran indicated that Judge Kassabian would instruct the jury again the next day to include the correct verdict form. Koob did not object.

On May 5, 2022, with Judge Kassabian presiding for the fourth day of trial, Koob asked that the instruction on malice be amended to include principles relating to heat of passion. Judge Kassabian replaced the instruction to include the amendment by Koob, over the Commonwealth's objection. Then, both parties agreed to Judge Kassabian re-reading the instructions in their entirety.

The jury returned its verdict finding Koob guilty of aggravated malicious wounding; the jury acquitted Koob of strangulation but convicted him of the lesser-included offense of assault and battery, as permitted by the verdict form. After the jury returned its verdict, Judge Kassabian polled the jury at Koob's request. After the poll, Koob raised no objection to the release of the jury. After the judge released the jury, one of the jurors notified the bailiff that his name was not called during the poll. The judge returned the jury to the jury box, repeated the poll including all of the jurors, and confirmed that the verdict was unanimous. Koob raised no objection during this procedure and did not claim the verdict was not unanimous.

- 8 -

D. *Post-trial Proceedings*

After trial, Koob moved to withdraw his argument in support of his May 4, 2022 motion to strike the evidence.[7] Koob then argued that the crime for which he was indicted—maliciously causing "bodily injury" to L.S.—was not the same crime for which he was convicted. Thus, Koob claimed that there was a fatal variance between the indictment and the evidence at trial that should have led the circuit court to dismiss the charge. Koob further claimed that the malicious wounding indictment was flawed, because it charged the intent required using the disjunctive "or" rather than with the conjunctive "and."

At a post-trial hearing, Koob argued that the malicious wounding charge should have been dismissed because the indictment was fatally defective. He also contended that, had the charge been dismissed as he requested at trial, "the strategy of the defense" for the strangulation charge "would have been completely different." Defense counsel asserted that Koob "would have had a more meaningful appreciation of testifying" in his own behalf.

In its opinion and order denying Koob's motion, Judge Tran noted that "Rule 3A:9(b)(1) of the Rules of the Supreme Court requires that defenses challenging the sufficiency or appropriateness of an indictment be raised before trial or be deemed waived." The court further stated, "Assuming the indictment was defective by combining all the intents under one indictment, [Koob] needed to seek relief at a pre-trial hearing rather than at the conclusion of the Commonwealth's case at trial."

Further, Judge Tran found that the Commonwealth's evidence, if believed, was sufficient to prove that Koob acted with the intents expressed in the aggravated malicious wounding statute. The judge stated that Koob was "fully and fairly apprised of the charges that were being

---

[7] Judge Tran later opined that "[w]ithdrawing and replacing an argument made at trial is inconsistent with the contemporaneous objections rules necessary to preserve an issue on appeal."

levied against him" and that Koob's "argument of a defective indictment and sufficiency of the evidence constitute[d] an argument belated[ly] rais[ing] form over substance." The circuit court also concluded the evidence was sufficient to prove that L.S. sustained permanent and significant injury.

The circuit court rejected Koob's assertion that the circuit court erred in deferring a ruling on the motion to strike because the deferral affected his trial strategy. The court found that Koob's argument that, if the malicious wounding charge had been stricken, "he would have exercised his right to testify [to be] speculative and self-serving hindsight."

In a second motion to set aside the verdict, Koob asserted that the jury verdict form for aggravated malicious wounding was defective, because it allowed him to be convicted for a crime with which he was not charged. He also contended that the requisite intent was not specifically charged in the indictment. Noting that the parties agreed to the verdict form, the circuit court found that Koob's arguments were "simply recycled" from his prior post-trial contentions and "remain[ed] unpersuasive."

Koob filed a *pro se* third motion to set aside the verdict and supplemental pleading, charging prosecutorial misconduct and the Commonwealth's failure to correct false testimony of its witness, L.S. The circuit court found that none of the statements Koob challenged were "demonstrably false." The circuit court denied both the second and third motions to set aside the verdict.

The circuit court appointed new counsel to represent Koob on appeal; that attorney then moved to set aside the verdict and for a mistrial. He asserted that the procedure substituting Judge Kassabian for Judge Tran on the fourth day of trial violated Code § 19.2-154 and Koob's right to a fair trial. He claimed that the jury did not return a unanimous verdict and that a mistrial was warranted.

Judge Tran denied Koob's motion involving Code § 19.2-154 and any claim related to his decision to take the motion to strike under advisement. Following a hearing on February 10, 2023, Judge Kassabian denied Koob's motion concerning the claim of a non-unanimous verdict. However, since Judge Tran had entered a sentencing order, he issued an order stating that Judge Kassabian was not authorized to rule on the motion to set aside the verdict concerning verdict unanimity. In any event, however, Judge Tran later denied the motion.

Judge Tran suspended the entry of final judgment until March 3, 2023. On that date, Koob filed a "Fifth Motion to Set Aside Verdict" asserting a double jeopardy violation based on his conviction for both aggravated malicious wounding and assault and battery, that the evidence was insufficient to prove the charged offenses, and that there was error in the jury instructions. Koob also filed a "Brady Motion to Set Aside Verdict." Judge Tran denied the motions.

Koob appeals.

## II. ANALYSIS

A. *The claims of assignments of error 1, 2, 7, 8, and 12 were not timely objected to and are thereby waived.*

On appeal, Koob contends that Judge Kassabian's substitution for Judge Tran on the fourth day of trial violated Code § 19.2-154 (assignment of error 1), that Judge Kassabian's failure to poll all the jurors before dismissing them resulted in a non-unanimous verdict (assignment of error 2), that Judge Tran erred by taking under advisement the motion to strike the aggravated malicious wounding charge (assignment of error 7), and that the jury instructions and verdict form were defective (assignments of error 8 and 12). However, Koob did not raise these objections and arguments when the matters arose before the circuit court.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e]

contemporaneous objection requirement [in Rule 5A:18] is to allow the [circuit] court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both specific and timely — so that the trial judge would know the particular point being made *in time to do something about it*." *Id.* (emphasis omitted and added) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). Virginia circuit court judges are a resilient lot; a specific and timely objection will often result in judicial self-correction by making rulings that protect the litigants from potential error in real time, thereby eliminating even the need for an appeal. *See Brown v. Commonwealth*, 279 Va. 210 (2010).

Koob failed to raise the objections noted above at a time when the circuit court could address the claims and take any necessary corrective action. Accordingly, Koob failed to preserve these issues for appellate review. Rule 5A:18. Although there are exceptions to Rule 5A:18, Koob has not invoked them, and we do not do so sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).

B. *The evidence was sufficient to support Koob's convictions.*

Koob argues that the evidence was insufficient to sustain his convictions for aggravated malicious wounding and assault and battery (assignments of error 3 and 11). He maintains that the evidence did not exclude the reasonable hypothesis of innocence that another person attacked L.S. He also claims that the evidence did not prove that L.S. sustained a "permanent and significant physical impairment" as Code § 18.2-51.2(A) requires.

"In reviewing a challenge to the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018) (quoting *Kelly*, 41 Va. App. at 257). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017)). "In conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "Thus, we will affirm the judgment of the trial court unless that judgment is 'plainly wrong or without evidence to support it.'" *Id.* (quoting *Kelly*, 41 Va. App. at 257).

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). On appeal, we review the trier of fact's determination regarding the identity of the criminal actor in the context of "the totality of the circumstances." *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002) (quoting *Satcher v. Commonwealth*, 244 Va. 220, 249 (1992)).

It is well-established that in considering a sufficiency challenge, "[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). As with any element of an offense, identity may be proved by direct or circumstantial evidence. *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999).

"The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." *Simon*, 58 Va. App. at 206 (quoting *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993)). "While no single piece of [circumstantial] evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" *Ervin v. Commonwealth*, 57 Va. App. 495, 505 (2011) (alteration in original) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)). "In other words, in a circumstantial evidence case . . . the accumulation of various facts and inferences, each mounting upon the others, may indeed provide sufficient evidence beyond a reasonable doubt" of a defendant's guilt. *Id.*

L.S. testified that she was alone in Room 822 when Koob arrived. She was immediately alarmed by his demeanor, and within moments after entering the room, Koob accosted her with a knife. Although Koob told the police that a woman and an unidentified male attacked him, he later admitted in a phone call that he and the woman were alone and that his story to the contrary was untrue. When Wynn and Scanelle arrived and unlocked the door of Room 822, Koob burst from the room and tried to flee. Afterwards, no one other than L.S. was in the room. The blood of both L.S. and Koob was on the knife the police found in the trash can. In addition, no evidence suggested that Hale remained in Room 822 or was present when Koob was there or that Hale initiated the violence. Upon these facts and circumstances, a reasonable finder of fact could conclude that Koob, and not an unidentified male, was L.S.'s assailant.

Under Code § 18.2-51.2, a "physical impairment" is "any physical condition, anatomic loss, or cosmetic disfigurement." *Lamm v. Commonwealth*, 55 Va. App. 637, 644 (2010) (quoting *Newton v. Commonwealth*, 21 Va. App. 86, 90 (1995)). "To prove an injury is permanent, the Commonwealth need not present definitive testimony that a victim's injuries will never improve, but instead can leave it to the common sense of the [fact finder] to determine if

the injuries are permanent." *Id.* at 644-45. This Court has found that scarring may constitute a significant and permanent physical impairment. *See Newton*, 21 Va. App. at 90.

When Wynn and Scanelle arrived at Room 822 after the attack, they found L.S. unconscious and barely breathing. She had suffered many stab wounds, including one that punctured her lung. At trial, the Commonwealth introduced photographs of L.S. after the attack and the injuries she received. Nine months after the attack, L.S. still walked with a cane, required physical therapy, and was scarred. From these facts and circumstances, a reasonable finder of fact could conclude that L.S.'s injuries were significant and permanent.

> C. *As the Commonwealth's evidence proved that Koob caused bodily injury to L.S. and that he did so with the intent to maim, disfigure, disable, and kill, there is no fatal variance between the indictment and the evidence.*

Koob maintains that the circuit court erred in refusing to dismiss the aggravated malicious wounding charge, because the indictment was fatally defective (assignments of error 4-6). Under Code § 18.2-51.2(A),

> [i]f any person maliciously shoots, stabs, cuts or wounds any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill, he shall be guilty of a Class 2 felony if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment.

Koob's indictment for aggravated malicious wounding charged that he "feloniously and maliciously cause[d] bodily injury to [L.S.] with the intent to maim, disfigure, disable or kill, thereby severely injuring and causing [L.S.] to suffer permanent and significant physical impairment."

"In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ." U.S. Const. amend. VI. "The indictment or information shall be a plain, concise and definite written statement, (1) naming the accused, (2) describing the offense charged, (3) identifying the county, city or town in which the accused

- 15 -

committed the offense, and (4) reciting that the accused committed the offense on or about a certain date." Code § 19.2-220. "The purpose of an indictment 'is to give an accused notice of the nature and character of the accusations against him in order that he can adequately prepare to defend against his accuser.'" *Walshaw v. Commonwealth*, 44 Va. App. 103, 109 (2004) (quoting *King v. Commonwealth*, 40 Va. App. 193, 198 (2003)); *see also Scott v. Commonwealth*, 49 Va. App. 68, 73 (2006).

"Notice to the accused of the offense charged against him is the rockbed requirement which insures the accused a fair and impartial trial on the merits and forms the key to the fatal variance rule." *Hairston v. Commonwealth*, 2 Va. App. 211, 214 (1986). "It is true that a variance between the allegations of an indictment and proof of the crime may be 'fatal,' and '[t]he offense as charged must be proved.'" *Traish v. Commonwealth*, 36 Va. App. 114, 134 (2001) (alteration in original) (quoting *Hawks v. Commonwealth*, 228 Va. 244, 247 (1984)). "A variance is fatal, however, only when the proof is different from and irrelevant to the crime defined in the indictment and is, therefore, insufficient to prove the commission of the crime charged." *Id.* at 134-35 (quoting *Hawks*, 228 Va. at 247). But "[n]ot every variance is fatal. A 'non-fatal' variance is one that does not undermine the integrity of the trial and, thus, does not warrant a reversal on appeal." *Purvy v. Commonwealth*, 59 Va. App. 260, 266 (2011). "While 'certainty to a reasonable extent is an essential requirement of criminal pleading,' this principle should not lead to 'the acquittal of guilty persons on account of some nice technical distinction between the offense charged and the offense proved against a person accused of crime.'" *Id.* (quoting *Lewis v. Commonwealth*, 120 Va. 875, 880 (1917)). "For this reason, we 'reject mere matters of form where no injury could have resulted therefrom to the accused.'" *Id.* (quoting *Hairston*, 2 Va. App. at 214).

In *Purvy*, we observed:

> a fatal variance occurs where the indictment charges a wholly different offense than the one proved — like charging theft of money by false pretenses from one victim, while proving only theft by false pretenses from another victim, *Gardner v. Commonwealth*, 262 Va. 18 (2001), or charging a defendant with shooting into one person's residence, but proving instead that he shot into the residence of someone else, *Etheridge v. Commonwealth*, 210 Va. 328 (1969).

*Id.* at 266-67. "In short, the 'offense *as charged* must be proved.'" *Id.* at 267 (quoting *Mitchell v. Commonwealth*, 141 Va. 541, 560 (1925)).

As in *Commonwealth v. Perkins*, 295 Va. 323, 328 (2018) (per curiam), "[t]he indictment in this case pleaded only bodily injury as the actus reus of the malicious wounding." "The mens rea of the crime is an 'intent to maim, disfigure, disable or kill,' which may be pleaded conjunctively, but the Commonwealth 'need prove only one intent to convict[.]" *Id.* at 328-29 (quoting 7 Ronald J. Bacigal, *Virginia Practice Series: Criminal Offenses and Defenses* 47-48 (2017-2018 ed.)); *see also Coleman v. Commonwealth*, 261 Va. 196, 200 (2001) (explaining that to support a malicious wounding conviction, the Commonwealth must prove that the defendant acted with "the intent to maim, disfigure, disable or kill").

Here, Koob asserts that the indictment stated the necessary intent elements in the disjunctive and that the indictment failed to allege the means of bodily injury to L.S. However, as the circuit court found, the Commonwealth's evidence proved that Koob caused bodily injury to L.S. and that he did so with the intent to maim, disfigure, disable, and kill. We thus find no fatal variance between the indictment and the evidence, and we find no reason to disturb the verdict for aggravated malicious wounding.

D. *The circuit court did not err in denying the motion to set aside the verdict under Giglio[8] and Napue.[9]*

Koob asserts that the circuit court erred in denying his motion to set aside the verdict, because the Commonwealth did not inform the jury of "an agreement of leniency" between the prosecution and L.S. (assignment of error 9). He claims that "[h]ad the jury been apprised of the promise of leniency the jury might have concluded that [L.S.] lied when she was interviewed by the police and later testified in trial."

"When a person has provided information to governmental agents about the commission of a crime for which he received a benefit in the disposition of criminal charges against him, this fact may be used to impeach his credibility when he testifies as a witness for the prosecution." *Lovitt v. Warden*, 266 Va. 216, 246 (2003) (citing *Giglio v. United States*, 405 U.S. 150, 154-55 (1972)). "However, when a person does not receive a benefit from providing such information, and later testifies as a prosecution witness, the mere fact of his prior cooperation with the governmental agents does not constitute impeachment evidence subject to disclosure as exculpatory evidence." *Id.*

Under *Napue v. Illinois*, 360 U.S. 264, 269 (1959), "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.*

Detective Chamberlain testified that, due to L.S.'s medical condition, he could not converse with her about the incident until August 14, 2021. At that time, the detective did not offer L.S. "formal immunity" from any possible charges for prostitution. The detective

---

[8] *Giglio v. United States*, 405 U.S. 150 (1972).

[9] *Napue v. Illinois*, 360 U.S. 264 (1959).

explained that he nonetheless had no intention of charging her with prostitution. He added that during that meeting the prosecutor told L.S. that she was not "looking to charge" her for prostitution. L.S. testified that she was reluctant to discuss her involvement with prostitution during the August 14, 2021 conversation, but she did not recall either the detective or the prosecutor saying that L.S. would not face criminal charges.

Contrary to Koob's assertion, the record thus contains no evidence that any "leniency agreement" ever existed. While the detective testified that neither he nor the prosecutor intended to charge L.S. with prostitution, there was no immunity agreement. In fact, L.S. testified that she did not recall what the detective or the prosecutor said about possible criminal charges against her. We find no merit to Koob's claim that the Commonwealth knowingly allowed false testimony at trial concerning an agreement of leniency for L.S., and the circuit court did not err in denying the motion to set aside the verdict.

E. *No double jeopardy violation occurred when the jury convicted Koob for aggravated malicious wounding for attacking L.S. with the knife.*

Koob contends that his sentences for both aggravated malicious wounding and assault and battery violated double jeopardy protections (assignment of error 10). The double jeopardy clause protects against "(1) a second prosecution for the same offense after acquittal, (2) a prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *Commonwealth v. Hudgins*, 269 Va. 602, 604-05 (2005). "In the single-trial setting, 'the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.'" *Commonwealth v. Gregg*, 295 Va. 293, 298 (2018) (quoting *Blythe v. Commonwealth*, 222 Va. 722, 725 (1981)). Koob asserts a violation of the third protection, arguing that he faced multiple punishments for the same offense.

The jury convicted Koob upon his indictment for aggravated malicious wounding. As for the strangulation offense, and without objection from Koob, the circuit court instructed the jury that it could convict Koob of the lesser-included offense of assault and battery if it found the necessary elements for such but, at the same time, found that the Commonwealth had failed to prove strangulation.

"It is well settled that two or more distinct and separate offenses may grow out of a single incident or occurrence, warranting the prosecution and punishment of an offender for each." *Martin v. Commonwealth*, 221 Va. 720, 723 (1981). It thus follows that "if an accused is prosecuted for multiple offenses based upon distinct and separate acts, the offenses would be neither identical nor lesser-included for double jeopardy purposes." *Id.*

"In the prosecution for two crimes in the same trial, the double jeopardy defense does not apply unless (a) the defendant is twice punished *for one criminal act, and* (b) the two punishments are either for the *same crime* or one punishment is for a crime which is a lesser included offense of the other." *Coleman*, 261 Va. at 200 (additional emphasis added). "Whether there has been a double jeopardy violation presents a question of law requiring a de novo review." *Fullwood v. Commonwealth*, 279 Va. 531, 539 (2010).

Koob was prosecuted for distinct criminal acts: attacking L.S. with a knife and then choking her with his hands when she tried to escape. While the jury found that the second act did not constitute the crime of strangulation, it was still entitled to conclude that it amounted to assault and battery. No double jeopardy violation occurred when the jury convicted Koob for aggravated malicious wounding for attacking L.S. with the knife. The circuit court did not err in denying Koob's motion to set aside the verdict on double jeopardy grounds.

## III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*